UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| APEX COLORS, INC., <br>     Plaintiff, <br><br> v. <br><br> CHEMWORLD INTERNATIONAL LIMITED, INC., CHEMWORLD INTERNATIONAL LIMITED, LLC, ATUL MODI, and MANOJ MODI, <br>     Defendants. <br>_____ <br><br> APEX COLORS, INC., <br>     Plaintiff, <br><br> v. <br><br> PAUL BYKOWSKI, <br>     Defendant. <br>_____ <br><br> CHEMWORLD INTERNATIONAL LIMITED, INC., CHEMWORLD INTERNATIONAL LIMITED, LLC, ATUL MODI, MANOJ MODI, and PAUL BYKOWSKI, <br>     Counterclaimants, <br><br> v. <br><br> APEX COLORS, INC., <br>     Counterclaim Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CAUSE NO.: 2:14-CV-273-PRC |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Rule 11 Sanctions [DE 165], filed by Defendants Chemworld International Limited, Inc., Chemworld International Limited, LLC, Atul Modi, and Manoj Modi on January 27, 2015, and on Defendants' Supplemental Motion for Rule 11

Sanctions [DE 176], filed by the same Defendants on February 11, 2015. Both motions are fully briefed and ripe for ruling.

On August 5, 2014, Plaintiff Apex Colors, Inc. filed a Complaint against Defendants Chemworld International Limited, Inc., Chemworld International Limited, LLC, Atul Modi, and Manoj Modi. The Complaint alleged claims of civil conspiracy to misappropriate Plaintiff's property (Count I), civil conspiracy to tortiously interfere with Plaintiff's prospective economic advantage (Count II), and misappropriation of Plaintiff's trade secrets in violation of the Indiana Trade Secrets Act (Count III). On November 21, 2014, Judge Kent Lindquist filed a recommendation that the reference for the Adversary Complaint in Paul Bykowski's bankruptcy proceeding be withdrawn, and on December 12, 2015, the Adversary Complaint was transferred to District Court with the cause number 2:14cv456. On December 18, 2014, the Court consolidated cause number 2:14cv456 with the instant cause of action for all purposes. On April 8, 2015, Plaintiff filed an Amended Complaint with leave of Court, adding Bykowski as a named Defendant in this action and adding claims of unfair competition (Count IV) and federal trademark infringement (Count V).

In the instant motions for Rule 11 sanctions, filed on January 27, 2015, and February 11, 2015, the Chemworld Defendants seek sanctions related to the allegations in the original Complaint. Federal Rule of Civil Procedure 11(b) provides:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

The Rule further provides sanctions for a violation of Rule 11(b):

**(c) Sanctions.**
**(1) In General.** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

**(2) Motion for Sanctions.** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

**(3) On the Court's Initiative.** On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

Fed. R. Civ. P. 11(c).

The Court may impose sanctions under Rule 11(c) for "submissions that are filed for an improper purpose or without reasonable investigation of the facts and law necessary to support their claims." *Senese v. Chi. Area I.B. of T. Pension Fund*, 237 F.3d 819, 823-24 (7th Cir. 2001) (citing

Fed. R. Civ. P. 11(b), (c); *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998); *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932-33 (7th Cir. 1989) (en banc)); *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993); *see also Cuna Mut. Ins. Soc'y v. Office and Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 561 (7th Cir. 2006) (recognizing that Rule 11(c) "allows courts to impose sanctions on a party if the requirements of Rule 11(b) are not met").

In determining whether Rule 11 sanctions are warranted, the Court must "undertake an objective inquiry into whether the party or his counsel should have known that his position was groundless." *Cuna*, 443 F.3d at 560 (quoting *CNPA v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 397 (7th Cir. 1987)). As Rule 11 is an objective test, the Seventh Circuit Court of Appeals has repeatedly observed that an "empty head but a pure heart is no defense," *U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005) (quoting *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir. 1994)), and that Rule 11 "requires counsel to read and consider before litigating," *id*. (quoting *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986)).

The burden is on the movant to show that Rule 11 sanctions are appropriate. *Signature Retail Servs., Inc. v. Darnell*, No. 12 C 7657, 2013 WL 1767716, at *2 (N.D. Ill. Apr. 24, 2013) (citing *Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08C400, 2011 WL 5373975, at *6 (N.D. Ill. 2011) (referencing the "'high burden of showing that Rule 11 sanctions are warranted'") (quoting *Lundeen v. Minemyer*, No. 09 C 3820, 2010 WL 5418896, at *3 (N.D. Ill. 2010))). The Seventh Circuit Court of Appeals has recognized that "'[w]hile the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution.'" *Id*. (quoting *Fed. Deposit Ins. Corp. v. Tekfen Const. and Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir.1988)).

## A. Motion for Rule 11 Sanctions (docket entry 165)

In this motion, the Chemworld Defendants argue that allegations in Paragraphs 1, 2, 24, 25, 27, 28, 41, and 55 are frivolous and without a reasonable legal or factual foundation because (a) Bykowski has no covenant not to compete following his resignation; (b) information that originates with Bykowski is not Apex's "Confidential Information"; (c) Bykowski does not "wrongfully possess" Apex's assets when the asset, information, formula, lot number, product identifier, or supplier was "originated by" Bykowski or brought with him in 2001; and (d) Bykowski can sell to any customer or prospective customer "developed or identified by Employee."

*1. Background*

    a.    Relevant provisions of Bykowski's Employment Agreement

Section 2 of Bykowski's Employment Agreement is titled "Nondisclosure and Noncompetition." (Compl. Ex. 2). Paragraph 2(a) defines "Confidential Information":

> <u>Confidential Information</u>. "Confidential Information" means any trade secrets or information known to Employee as a result of his employment with Employer, at any time before or from and after the date of this Agreement (*not including information originated by Employee*) of a secret, proprietary or confidential nature relating to Employer, products, business policies and operations, including, without limitation, all methods, formula, forecasts, customer requirements, processes, products, marketing strategies, data, improvements, product development, financing, strategies, price lists, commission schedules, forecasts [sic], prospective customer lists, marketing programs and accounting systems, unless such information is in the public domain to such an extent as to be readily available to competitors. . . . *Confidential Information shall include the work product of Employee developed as a part or in furtherance of, or during the working hours of, Employees's employment with Employer and shall not include all customers and prospective customers developed or identified by Employee*. All Confidential Information provided to Employee . . . , *except that information which the Employee brings with him*, shall be held and protected by Employee with the strictest confidentiality, and Employee shall take all reasonable steps to protect the confidentiality of the Confidential Information provided to Employee, and, except as required by law, court order or any governmental authority, Employee shall not, whether during or after employment cause or allow any of the Confidential Information to be disclosed, delivered,

5

transferred, or otherwise be made known to any person or entity not expressly authorized by Employer to receive or be made aware of the same. *The term "Confidential Information" does not include* information which (I) becomes generally available to the public other than as a result of a disclosure by Employee or its agents and affiliates, (ii) was available to Employee on a non-confidential basis prior to its disclosure to Employee by Employer its representatives, or, (iii) becomes available to Employee on a non-confidential basis from a source other than Employer or its representatives, provided such source is not bound by a confidentiality agreement with Employer or its representatives.

(Compl. Ex. 2) (emphasis added).

Paragraph 2(b) provides:

Limitation on Use: All Confidential Information of Employer . . . which Employee receives or of which Employee becomes knowledgeable shall be utilized by Employee for the singular purpose of carrying out Employee's duties and undertakings on behalf of Employer. Employee shall diligently protect and maintain the confidentiality of the Confidential Information. *In no event shall Employee, whether during or after employment, copy any Confidential Information, except as needed, nor utilize any Confidential Information in a manner so as to compete with Employer, or to aid or further the competition of any other person or entity with Employer*, or to otherwise disclose or dispose thereof for personal gain or for any reason injurious to the interest of Employer during the term hereof. *The limitation on use of the Confidential Information by Employee shall extend during the period subsequent to employment during which Employee may be bound by the Noncompetition provision set forth herein at Section 2(c).* Upon termination of Employee's employment for any reason, Employee shall immediately turn over to Employer all books, records, price lists, customer lists and other material relating to Employee's employment or to the business of Employer.

(Compl. Ex. 2) (emphasis added).

Paragraph 2(c) addresses Noncompetition:

Noncompetition. Employee covenants and agrees that he/she will not, at any time during the term of employment with Employer and for a period of two (2) years thereafter *if Employee is terminated with Cause*, directly or indirectly (through one or more intermediaries) engage in, or have any interest in any person, firm, corporation, partnership or business . . . which engages in, any activity which is the same as, similar to or competitive with any activity in which Employer is currently or is then engaged in . . . .

*Id*. (emphasis added).

Finally, Paragraph 2(d) is titled "Nonemployment; Noninducement":

<u>Nonemployment; Noninducement.</u> Employee agrees during the Term of his Agreement and *for two (2) years immediately following termination* not to solicit or directly offer inducements, for any reason, any suppliers, customers, sales representatives, dealers or distributors, agents, employees, consultants or other persons or concerns dealing with or in some way associated with Employer (whether or not through contacts with Employee) to terminate such association with Employer, or to become associated with Employee in any business which competes with employer or which Employee is prohibited from engaging in, assisting or having an interest in under this Agreement.

*Id*. (emphasis added).

    b.    Relevant provisions of the Complaint

Defendants specifically identify the allegations in Paragraph 1 of the Complaint that "the Defendants are utilizing Apex's confidential and valuable information, assets and trade secrets for their own personal economic gain in concert with Apex's former President Paul Bykowski ("Bykowski") while he was an employee and owed a fiduciary duty to Apex . . . ." (Compl. ¶ 1).

Paragraph 2 of the Complaint alleges: "Apex brings this action to determine liability of Chemworld, Chemworld LLC, Atul and Manoj in the misappropriation and use of Apex's property and the intentional interference with Apex's business expectancy as part of a civil conspiracy with non-party Paul Bykowski ("Bykowski")." (Compl. ¶ 2).

Paragraph 24 alleges: "Under the Employment Agreement, Bykowski agreed that all Confidential Information belonging to Apex would be held and protected by Bykowski with the 'strictest confidentiality.' (See Exhibit A, ¶ 2(a))."

Paragraph 25 alleges: "Further, Bykowski agreed that '[in] no event shall Employee, whether during or after employment, copy any Confidential Information . . . not [sic] nor utilize any

7

Confidential Information in a manner so as to compete with Employer, or to aid or further the competition of any other person or entity with Employer . . .'" (citing Exhibit A, ¶ 2(b)).

Paragraph 27 alleges: "With regard to non-competition, Bykowski agreed that he would 'not, at any time during the term of the employment with Employer . . . directly or indirectly (through one or more intermediaries) engage in . . . any activity which is the same as, similar to or competitive with any activity in which Employer is currently or then engaged in . . .' (See Exhibit A, ¶ 2(c))."

Paragraph 28 alleges: "Bykowski also agreed to not solicit or induce any customers, suppliers or sales representatives following his termination for a period of two years. (See Exhibit A, ¶ 2(d))."

Paragraph 41 alleges: "Apex obtained notice of Bykowski's and Chemworld/Chemworld LLC's deliberate and wrongful competition and misappropriation of Apex's assets on May 21, 2013 when Apex received a Purchase Order at the Portage, Indiana laboratory seeking to purchase a product which the customer identified as CHEMWORLD SB104/[APEX] SB104 and assumed to be the same product."

Paragraph 55, which is contained within Count I, alleges: "As alleged above, Bykowski, Chemworld, Chemworld LLC, Atul and Manoj knowingly worked together in a scheme to convert and misappropriate Apex's assets, trade secrets and materials described hereinabove for their own use . . . ." In subparagraphs a through p, Plaintiff then alleges twenty-one categories of such "assets, trade secrets, and materials."

2.  *Analysis*

Defendants first argue that, in Paragraph 24 of the Complaint, Plaintiff's assertion that "all Confidential Information belonging to Apex would be held and protected by Bykowski with the

'strictest confidentiality'" intentionally fails to disclose that the definition of "Confidential Information" excludes "information originated by Employee." (Compl., Ex. 2, ¶ 2(a). Defendants also argue that Plaintiff further intentionally failed to reveal that "Confidential Information" excludes "all customers and prospective customers developed or identified by Employee" and that Bykowski was under no obligation to protect "that information which the Employee brings with him." *Id*.

Defendants similarly argue that, in Paragraph 25 of the Complaint, Plaintiff alleges that Bykowski agreed not to copy or utilize "Confidential Information" to compete with Plaintiff but that Plaintiff again does not plead the exclusions to the definition of "Confidential Information" for information originated by Bykowski and customers and prospective customers developed or identified by Bykowski.

First, Plaintiff attached a full copy of the Employment Agreement to the Complaint; nothing was hidden. Second, Defendants are correct that information originated by Bykowski or customers or prospective customers developed or identified by Bykowski is excluded from the definition of "Confidential Information." However, Defendants fail to recognize that the definition of "Confidential Information" includes "the work product of [Bykowski] developed as a part of or in furtherance of, or during the working hours of, Employee's employment with Employer." (Compl., Ex. 2, ¶ 2(a)). In addition, there are factual disputes, as evidenced by the testimony at the preliminary injunction hearing, about what information and materials Bykowski brought with him that fall into the exceptions to the definition of "Confidential Information."

Next, Defendants criticize Plaintiff's use of ellipses in paragraph 27 of the Complaint to omit language from the noncompete clause in paragraph 2(c) of the Employment Agreement regarding

9

the period *after* Bykowski's termination, specifically that the covenant was that Bykowski "will not, at any time during the term of employment with Employer and for a period of two (2) years thereafter if Employee is terminated with Cause" engage in competitive activity. (Compl., Ex. 2, ¶ 2(c)). However, Paragraph 27 of the Complaint addresses only Bykowski's agreement not to compete *during* Bykowski's employment. The omission of the language regarding competition after the termination of Bykowski's employment is a separate issue and its omission from Paragraph 27 is not sanctionable. Moreover, evidence was admitted during the preliminary injunction hearing that Bykowski competed with Plaintiff while still an employee.

In Paragraph 28, Plaintiff addresses that later time period after the termination of his employment, alleging, consistent with the terms of Paragraph 2(d) ("Nonemployment; Noninducement") of the Employment Agreement that Bykowski "agreed to not solicit or induce any customers, suppliers or sales representatives following his termination for a period of two years." (Compl. ¶ 28). Defendants argue that Paragraph 28 is nevertheless misleading first because Bykowski was not "terminated" and second because, even if Bykowski was terminated, the Employment Agreement only prohibits Bykowski from soliciting customers, suppliers, or sales representatives to participate in activities "which Employee is prohibited from engaging in, assisting or having any interest under this Agreement."

First, Defendants are correct that Bykowski resigned from Apex and that he was not terminated by Apex. However, in Section 4 of the Employment Agreement, titled "Termination," the word "terminate" does not mean only the cessation of Bykowski's employment by Apex. Rather, in two separate paragraphs, the word is also used to describe the ending of Bykowski's employment by Bykowski: (1) "Employee may *terminate* this Agreement at any time upon thirty (30) days' prior

10

written notice to Employer;" and (2) "Upon the termination of this Agreement by Employee, or by Employer due to death or Disability of Employee or for other Cause . . . ." (Compl., Ex. 2, ¶ 4(a).

Second, Defendants omit language from Paragraph 2(d) of the Employment Agreement when they assert that the Employment Agreement only prohibits Bykowski from soliciting customers, suppliers, or sales representatives to participate in activities "which Employee is prohibited from engaging in, assisting or having any interest in under this Agreement." Immediately preceding the quoted portion of ¶ 2(d) is the additional prohibition on becoming "associated with Employee in any business which competes with Employer." (Compl., Ex. 2, ¶ 2(d)).

As for Paragraph 41, Defendants object to the description of Defendants' actions as "deliberate and wrongful competition and misappropriation of Apex's assets." (Compl. ¶ 41). Again, there are disputes of fact as well as arguments regarding the interpretation of the Employment Agreement that render Plaintiff's allegations regarding Defendants' "deliberate and wrongful competition and misappropriation" not sanctionable.

Finally, Defendants note that, in Paragraph 55 of the Complaint, Plaintiff attempts to delineate the "Confidential Information" that Bykowski is allegedly "converting" or "misappropriating" through the twenty-one categories in subparagraphs (a) through (p). Defendants argue that Plaintiff should be sanctioned for failure to identify which of the items are exceptions to the definition of "Confidential Information" because they were "originated" by Bykowski or brought with Bykowski to Apex. However, Defendants themselves do not identify which items should be omitted from the list as exclusions. Moreover, the fact that some specific items within a given category may be exceptions does not make the entire category frivolous.

Defendants make assertions in the motion that Plaintiff's use of non-party subpoenas directed to Defendants' customers is indicative of Plaintiff's desire "[to] harass defendants and obtain market information to which it has no legal claim in order to utilize the same in an anti-competitive scheme." (Def. Mot. ¶ 21). However, the subpoenas were issued to obtain information pertaining to the allegations of Defendants' alleged misappropriation and use of Plaintiff's trade secrets. Plaintiff notes that documents and emails Plaintiff received in response to those subpoenas were not provided by Defendants in their responses to Plaintiff's discovery requests. Defendants have not shown that the Complaint was brought with an improper purpose.

Defendants similarly assert that Plaintiff's action to subpoena and then hold in contempt Craig Weadon "leads to the inescapable conclusion that Apex has the ulterior purpose of harassing, intimidating, discrediting and 'black-balling' anyone engaged in legitimate competition with Apex."(Def. Mot. ¶ 22). The Court disagrees. The subpoena issued to Weadon was for the purpose of obtaining information relevant to Apex's claims, and Weadon failed to respond.

Defendants have not met their burden of showing that the identified portions of the Complaint are frivolous, legally unreasonable, without factual foundation, or for an improper purpose. The evidence at the preliminary injunction hearing, although the motion for preliminary injunction was denied, demonstrated the significant factual disputes raised by the Complaint. Having made an objective inquiry based on Defendants' arguments and the evidence heard at the preliminary injunction hearing, the Court cannot say that Plaintiff or its counsel should have known that its position was groundless. Plaintiff was within the parameters of Rule 11 when it filed the Complaint. The Court denies Defendants' Motion for Rule 11 Sanctions.

**B. Supplemental Motion for Rule 11 Sanctions (docket entry 176)**

In this supplemental motion, Defendants argue that Plaintiff should be sanctioned for alleging that the formulations, product standards, and instructions for the products known as "MegaSpecks" and "MegaSpecks Ultra" were trade secrets that Bykowski and the Chemworld Defendants allegedly misappropriated.

The Chemworld Defendants do not specifically identify those portions of the Complaint that are allegedly frivolous. However, in Count I, Plaintiff alleges that Bykowski and the Chemworld Defendants worked together in a scheme to convert and misappropriate Plaintiff's "assets, trade secrets and materials," including, but not limited to, "Powder dye standards, color standards and their equivalent working standards, for all products including, but not limited to, MegaSpecks and MegaSpecks Ultra, tested by Apex for procurement of inventory through either Apex, or Finos, LLC," "Documents regarding the suppliers, manufacturing, grinding, sieving and processing of MegaSpecks and MegaSpecks Ultra," "All marketing records for all products referenced herein," "All chip books, samples, manuals, marketing materials and display items for . . . MegaSpecks and MegaSpecks Ultra," and "All historic sales records for all customers, including products sold (dyes, MegaSpecks and MegaSpecks Ultra. . . .), quantity, price, date of sales, and certifications sent." (Compl. ¶¶ 55(a), (b), (c), (f), and (I)).

Defendants argue that the allegations in the Complaint related to MegaSpecks and MegaSpecks Ultra are frivolous based on verified statements made by Shyam Zalani, Plaintiff's sole director and shareholder, in the Verified Complaint for Dissolution of Finos, LLC in the Delaware Court of Chancery on December 14, 2011, as well as in the Amended Verified Complaint for Dissolution filed on November 20, 2012, in that court.

First, Defendants note that, in the Amended Verified Complaint for Dissolution, Plaintiff admitted that Finos "utilized" the formulation of "MegaSpecks." Defendants argue that Plaintiff disclosed its trade secret to other members of Finos, LLC without the benefit of a non-disclosure agreement to preserve the secrecy of the formulation of "MegaSpecks." Plaintiff responds that Plaintiff, with fifty percent ownership in Finos, disclosed the formulation of "MegaSpecks" to Finos, the company that marketed and distributed the product, and did not disclose the formulation to a competitor or the public at large. Plaintiff responds that it had a right to mange Finos' affairs and that the other members of Finos owed Plaintiff a fiduciary duty of loyalty and care not to engage in self-dealing, citing *CSH Theaters, LLC v. Nederlander of San Francisco Associates*, 2015 WL 1839684, at *11 (Del. Ch. Ct. Apr. 21, 2015). Plaintiff contends that it did not need a confidentiality agreement with the other members of Finos who received the "MegaSpecks" formula because they owed a fiduciary duty to Apex. Defendants do not provide a legal response to this argument in their reply brief. Without deciding that issue, the Court finds that Defendants have not met their burden of demonstrating that Plaintiff's claim related to "MegaSpecks" was brought for an improper purpose, was not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or did not have evidentiary support.

Second, Defendants note that, in the same pleading in the Delaware Court of Chancery, Plaintiff admitted that Plaintiff did not know how to formulate "MegaSpecks Ultra" and that the formulation for "MegaSpecks Ultra" was known only to the Boggesses. Defendants argue that the formulation for "MegaSpecks Ultra" cannot be a protectable trade secret of Plaintiff's if Plaintiff did not know its formulation in the first place. However, Plaintiff clarifies in its response brief that it is not alleging that the formulation of "MegaSpecks Ultra" is one of its trade secrets. Rather,

14

Plaintiff alleges that Defendants misappropriated "MegaSpecks Ultra" powder dye standards, color standards, as well as documents regarding suppliers, manufacturing, grinding, sieving and processing of chip books, samples, manuals, marketing materials, display items, and historic sales records. Section 2(f) of the Finos settlement agreement gave Plaintiff "the right to retain and use those assets of Finos that it has in its possession or control." Notably, Defendants do not address their motion based on "MegaSpecks Ultra" in their reply brief. Defendants have not shown that Plaintiff's allegations regarding "MegaSpecks Ultra" are sanctionable.

The Court finds that Defendants have not demonstrated that Plaintiff or Plaintiff's attorneys violated Rule 11(b) by including allegations in the Amended Complaint regarding "MegaSpecks" and "MegaSpecks Ultra." The Court denies Defendants' Supplemental Motion for Rule 11 Sanctions.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Defendants' Motion for Rule 11 Sanctions [DE 165] and **DENIES** Defendants' Supplemental Motion for Rule 11 Sanctions [DE 176].

So ORDERED this 9th day of September, 2015.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT