# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

APEX COLORS, INC., )
     Plaintiff, )
      )
v. )   CAUSE NO.: 2:14-CV-273-PRC
      )
CHEMWORLD INTERNATIONAL LIMITED, )
INC., CHEMWORLD INTERNATIONAL )
LIMITED, LLC, ATUL MODI, MANOJ MODI, )
and PAUL BYKOWSKI, )
     Defendants. )

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Enforce Third Party Subpoenas [DE 486], filed by Plaintiff Apex Colors, Inc. ("Apex") on March 1, 2017, and on Non-Parties Eric and James Boggess and Wm. B. Tabler Co., Inc.'s Motion for a Protective Order [DE 492], filed by Non-parties Eric Boggess, James Boggess, and Wm. B. Tabler Co., Inc. (collectively "Deponents") on March 15, 2017. The motions were fully briefed on May 4, 2017.

## BACKGROUND

### A. Allegations of the Second Amended Complaint

On September 13, 2016, Apex filed a Second Amended Complaint, making the following allegations. Apex, which was founded in 2001, performed testing of, certified, and sold speciality chemical products in the plastics, coatings, and ink industries, which primarily included dyes and pigments. Shyam Zalani, the sole shareholder of Apex since its inception, hired Paul Bykowski to work at Apex. Bykowski was president of Apex from its inception to his resignation on September 5, 2012. Zalani directed

Bykowski to set up a color testing laboratory, which Bykowski did in Portage, Indiana. Bykowski's duties included "servicing customers of Apex and later Finos" and "procuring product for Apex and later Finos."

In 2002, Zalani along with Jim and Eric Boggess formed a company called Finos, LLC. Finos was half owned by Apex and half owned by Jim and Eric Boggess. At that time, Jim and Eric Boggess operated a specialty chemical distribution company called Wm. B. Tabler, which sold chemicals on behalf of multiple companies—that would also include Finos.

From Zalani's perspective, Indace (Zalani's pre-existing business that sourced specialty chemical products for use in the plastics, coatings, and ink industries) would handle the sourcing and importing of specialty chemicals, Apex would handle all U.S. based testing and certifying, and Finos would handle the sales. Apex transferred to Finos all assets related to the selling function—such as customer lists. Apex did not transfer intellectual property related to product testing against specifications—such as the product color standards, testing methods, testing specifications, log books, resting records, and standard lot numbering system.

Bykowski's job responsibilities included assisting Finos and Tabler with some sales functions, primarily filling customer orders. Similarly, the Boggesses assigned Tabler employees to assist with Finos sales activities.

At the outset, Apex paid its own employees and operating expenses and obtained reimbursement from Finos. Later, to simplify accounting, Finos paid Apex employees and operating expenses directly.

Apex alleges that Bykowski conspired with Chemworld to steal a business opportunity from Apex related to a pigment.

Apex alleges that Bykowski began sourcing dyes almost exclusively from Chemworld for Finos instead of sourcing the colorants through Apex. By 2011, through the use of Apex's laboratory, employees, and testing materials, Chemworld had become the primary supplier of colorants to Finos. Then, by conspiring with Chemworld to sell directly to Finos customers, Finos was cut out of the business, which harmed Apex as a half owner of Finos, as all revenues and profits flowed through Finos.

In 2012, Finos was in the process of dissolving. Bykowski approached Zalani about obtaining an ownership share in Apex. Apex alleges that Bykowski wanted ownership because Apex owned the property, including trade secrets and intellectual property, that would be needed for Bykowski and Chemworld to continue selling colors to Finos customers.

On September 5, 2012, while Zalani was out of the country, Bykowski resigned from Apex. Apex alleges that Bykowski then stole Apex's physical assets, such as color standards, log books, a color computer with electronic testing records, and hard copy testing records. As a result, Apex could no longer compete for Finos customers.

Bykowski returned to work for Apex on October 31, 2012. On January 1, 2013, Bykowski again resigned and refused to return the Apex assets in his possession.

In late 2012, Bykowski and Chemworld were soliciting Finos customers and secured most of the Finos customers to Chemworld. Bykowski used the Apex assets to test Chemworld products for the customers.

In April 2013, Apex learned of Bykowski's "treachery." On May 28, 2013, Apex demanded that Bykowski return all of the assets, trade secrets, and other Apex materials that Bykowski had misappropriated. On August 12, 2013, Apex demanded that Bykowski, Chemworld, and the Modi

brothers (who were directors, shareholders and officers of Chemworld) cease and desist using Apex's assets, trade secrets, and other Apex materials. They did not.

The Second Amended Consolidated Complaint asserts the following claims: Civil Conspiracy to Misappropriate Apex's Property (Count I); Misappropriation of Apex's Property (Count II); Civil Conspiracy to Tortiously Interfere with Apex's Prospective Economic Advantage (Count III); Tortious Interference with Prospective Economic Advantage (Count IV); Conspiracy to Misappropriate Apex's Trade Secrets in Violation of the Indiana Trade Secrets Act (Count V); Misappropriation of Apex's Trade Secrets in Violation of Indiana Trade Secrets Act (Count VI); Unfair Competition (Count VII); Breach of Fiduciary Duty (Count VIII); Breach of Contract (Count IX); Conversion (Count X); Replevin (Count XI); and Trespass (Count XII).

Relevant to the instant motion, in the prayer for relief, Apex asks, among other things, for an order "for an accounting to specifically identify all revenue and benefits realized by Bykowski either directly or indirectly through G.B. Consulting, William Tabler Company, Inc. or Chemworld, while Bykowski was president and employee of Apex" and "after the termination of Bykowski's employment." (ECF 397, ¶¶ L, M).

## B. The Subpoenas

Sometime in June 2016, Apex served on each of Eric Boggess, James Boggess, and Wm. B. Tabler Co. (collectively "Deponents") in Louisville, Kentucky, a subpoena, dated June 1, 2016, issued from the United States District Court for the Northern District of Indiana. *See* (ECF 486-1, Exs. A-C). The subpoenas are divided into the following categories covering 34 Requests: (A) Finos Sales to Customers; (B) Finos Procurement of Product; (C) Accounting Records of Finos and Tabler; (D) Paul

Bykowski's emails as well as emails to and from Paul Bykowski and representatives of Chemworld; (E) Dealings with Chemworld; (F) Finos' Attempts to Move into the Market for Pigments and Paul Bykowski and/or Tabler's Involvement in the Pigment Market; and (G) the Formation and Dissolution of Finos.

## C. The Present Discovery Dispute

Prior to June 15, 2016, Deponents' original attorney, who practices in Kentucky, spoke with counsel for Apex, and requested an extension of time to July 6, 2016, to serve written objections. Counsel for Apex agreed.[1]

On June 23, 2016, Deponents' attorney sent an email to counsel for Apex advising that Deponents "strenuously object to the subpoena you recently sent out. The vast majority of the documents you requested are confidential, proprietary information and will not be disclosed. I expect to have more specific objections to each item to you no later than Tuesday, June 28, 2016." (ECF 499-1).

On July 1, 2016, counsel for Deponents sent an email indicating that he and Eric Boggess would be discussing the subpoena response on July 5, 2016, and expected to serve the response on July 5, 2016.[2]

On July 6, 2016, Deponents served on Apex a document titled "Responses and Objections to Specific Requests." (ECF 486-2, Ex. D). That same date, counsel for Apex responded, thanking counsel

---

[1] This information comes from the declaration of Attorney Robert A. Marshall. Apex has offered no evidence or declaration to the contrary.

[2] Although Exhibit A to Apex's Sur-Reply was not filed with the Sur-Reply at docket entry 509, Exhibit A was attached as an exhibit to Apex's Motion for Leave to File Sur-Reply. *See* (ECF 507-2). In the interests of justice, the Court considers Exhibit A.

for Deponents for the response and indicating that she would review the response and get back to him as soon as possible.

On July 25, 2016, counsel for Apex sent a response to the objections to counsel for Deponents. In the cover letter, Apex noted that there are three electronic sources of documents: Macola (accounting), Commence (sales), and emails. Apex offered to travel to Louisville, Kentucky, or to arrange for remote access to the databases in Macola and Commence. As for the emails, Apex asked to discuss the availability of emails and where and how they might be searched. Apex also asked to have a "substantive conversation of the location of the electronic documents . . . as well as the paper records, and the various options for accessing these—not only with experts but also without." (ECF 486-2, Ex. E). Apex asked counsel for Deponents to propose times for the conference. Apex also asked for an indication as to when Apex would receive the documents/data that was not objected to. Finally, Apex provided a written response to Deponents' objection to each of the Requests. Deponents' counsel did not respond and did not return counsel for Apex's calls.

Although it is unclear from the evidence *when* the communications occurred, Kentucky counsel for Deponents states in his declaration that he and counsel for Apex had "extensive communications trying to reach an agreement on the narrowing of Apex's subpoenas to Deponents." (ECF 506-1, ¶ 5).

Apex filed a subpoena enforcement action in Louisville, Kentucky.

In September 2016, Defendant Paul Bykowski filed a Third Party Complaint against Eric and Jim Boggess in the instant litigation, prompting the Boggesses to retain a Chicago law firm for their defense. The new attorney contacted counsel for Apex and offered to work with Apex on voluntary compliance with the Kentucky subpoenas in exchange for dismissal of the Louisville enforcement action, agreeing to the

jurisdiction of this Court to resolve any issues related to the subpoenas. Apex agreed and dismissed the Kentucky enforcement action.

On December 1, 2016, counsel for Apex wrote to new counsel for Deponents to follow up on an earlier discussion regarding the subpoenas. (ECF 499-2, Ex. F). In that correspondence, counsel for Apex proposed a declaration from Deponents as to matters that Apex was seeking through the subpoenas, which would obviate the need for responses to requests Nos. 7, 13, 14, 26, 27, 28, 29, 30, 31, and 32. Counsel for Apex also provided narrower date ranges for Requests Nos. 4-5 and 33. Counsel for Apex indicated that she was still waiting for a response regarding Macola, Commence, emails, and paper documents and asked for a response in writing.

On December 9, 2016, counsel for Deponents emailed counsel for Apex and indicated that the Boggesses had available for inspection in Louisville, Kentucky, approximately 27-28 bankers' boxes and 15-20 large folders containing paper copies of Finos-related documents from the Macola program/database. (ECF 486-3, Ex. F). Counsel for Deponents explained that the "hardcopy duplicates are organized in a manner the electronic records are not, and so reviewing and understanding them should be significantly more efficient than accessing electronically-kept versions, which would likely require a forensic protocol and significant technical support." (ECF 486-3, Ex. F). Counsel describes these hard copy records as: 8 boxes of customer orders; 9 boxes of receivables/payables, missing 2012; 9 folders of month-end inventories, missing 2003, 2004; 6 large folders of inbounds/outbounds, missing 2003, 2004, 2006, 2007 (inbounds only); 1 box of purchase orders; and 9 boxes of financials. Counsel further explained that Tabler accounting files for the same time period might be commingled with Finos accounting information within the boxes, and that Eric Boggess was working to segregate that information that is not

Finos-related. As for emails, counsel for Deponents suggested that a narrower date range be agreed upon from the requested January 1, 2007-December 31, 2013 date range to the proposed date range of January 1, 2007-March 31, 2013 because March 31, 2013, is the date of the Finos dissolution. (ECF 486-3, Ex. F).

On December 9, 2016, counsel for Apex responded, expressing frustration that Apex still had not been given access to the Macola and Commence databases, despite discussions for approximately one year. Counsel for Apex again asked for remote access to view the databases in Macola and Commence, stating that Apex was able to access the databases remotely while Finos was operating. Counsel explained that printouts of sales and accounting information is "tedious and often impractical" because it does not allow for sorting. "Accordingly, to the extent that the same information is available in electronic and paper form, it is preferable to view the information electronically." (ECF 486-3, Ex. F). Counsel for Apex asked counsel for Deponents to propose a vendor that could facilitate access to the databases so that Apex could discuss the logistics and cost of searching with the vendor. As for the emails, counsel for Apex offered to produce search terms and custodians but asked for a confirmation that the emails for the 2007 to 2013 time period are available in a format that can be searched.

On December 13, 2016, counsel for Deponents responded, indicating that Eric Boggess was able to identify paper documents in boxes as Finos-specific and responsive. Counsel for Deponents explained that the information on the Commence and Macola servers is co-mingled and not easily separated and that there is no way to provide remote access without granting the viewer the ability to see sensitive Tabler business information. Counsel writes, "The Macola program does not allow for selective authorization. Once a user has access, the user has access to all databases. The Commence database provides similar

challenges." (ECF 486-3, Ex. F). Counsel for Deponents proposed that the hard copy access would be a good place to start with its production and proposed that, if the hard copy access is not sufficient, Deponents and Apex could explore using a vendor to see if it is possible to limit remote access. Finally, Deponents asserted that, within the Commence database, there was customized computer code that Eric Boggess had written that he considered proprietary and did not want Apex to access.

On December 13, 2016, counsel for Apex replied, noting that Deponent's original counsel in Kentucky, Robert A. Marshall, had indicated that both databases could be accessed through a vendor but had never provided additional information despite counsel for Apex's requests. (ECF 486-3, Ex. F). Counsel for Apex continued to assert that electronic access is the most efficient way to access the information and to ensure that it is complete, noting that there is no guarantee that the physical copies are complete. For emails, counsel for Apex offered to propose search terms and custodians, but asked for confirmation that Deponents in fact have emails for the 2007 to 2013 time period and that they are in a searchable format. Counsel for Apex also asked for an answer by the end of the week as to whether Tabler's in-house person or the vendor could confirm what information is available through Macola and Commence and how difficult it is to obtain the information. Counsel for Apex also asked for clarification as to why accessing the databases would jeopardize the asserted proprietary code.

On January 5, 2017, counsel for Apex emailed counsel for Deponents, first asking for a response to the previous email. (ECF 499-1, Ex. D). Then, in an attempt to resolve outstanding issues, counsel for Apex agreed to shorten the period for the search of emails from the end date of December 2013 to March 2013. Counsel for Apex also proposed a list of search terms and custodians for searching the emails. *See* (ECF 486-3, Ex. G). Counsel for Apex also proposed modification to many of the requests after

consultation with her client in order to lessen the burden on Deponents. *See* (ECF 499-1, Ex. D). These modifications included: reducing the time period for Requests No. 1 (2008-2012), No. 2 (2008-2012), No. 3 (2008-2012), No. 11 (2008-2012), No. 24 (2009-2012), No. 25 (2008-2012), and No. 31 (2008-2012); clarifying the time period as 2006-2012 and provided additional explanation for Requests Nos. 4 and 5; *withdrawing* Requests Nos. 12, 13, 14, 27, 28, 30, 32, and 33; proposing the withdrawal of Requests Nos. 7, 26, 29, and 31 if Deponents produce a declaration regarding that information; and limiting the information sought in Requests Nos. 16 and 17 to eight named email custodians (Larry Krock, Christie Downs, Buddie Miller, Barb/Barbara Boggess, Val Deehan, Eric Boggess, Jim Boggess, and Lloyd Kantner) with six search terms (Chemworld, Atul, Manoj, Shabnom, Daquila, Eagle), in Request No. 18 to the same eight custodians with four search terms (Chemworld, Atul, Manoj, and Shabnom), in Requests No. 19 and 20 to the same eight custodians with three search terms each (Bykowski, Deehan, Molnar and Atul, Manoj, and Shabnom, respectively), and in Request No. 26 to seven named custodians (Larry Krock, Christie Downs, Buddie Miller, Barb/Barbara Boggess, Val Deehan, Eric Boggess, and Jim Boggess) with 5 search phrases (pigment and Paul, pigment and Geri, pigment and GB, pigment and G.B., and pigment and Bykowski). Apex proposed no modifications for Requests Nos. 6-10, 15, and 29.

In the same email, counsel for Apex acknowledged the impasse as to the production of records in paper versus electronic format with regard to the sales and accounting documents. Counsel for Apex again asserted that the paper records are incomplete, whereas the electronic records are complete and that there is no way to know what is missing from the paper records. Counsel for Apex again asserted that the electronic records are more usable.

Later the same day, counsel for Deponents responded, thanking counsel for Apex for narrowing the subpoena requests. (ECF 499-1, Ex. F). Counsel for Deponents indicated that he would need to discuss counsel for Apex's proposal with Eric Boggess, hoping to discuss the matter with him within approximately one week. Shortly thereafter, counsel for Apex acknowledged the response and indicated that Apex was willing to bear the reasonable costs associated with obtaining the discovery. *Id.*

On February 1, 2017, Jason from One Source Discovery, the third party vendor agreed upon by Apex and Deponents, sent counsel for Apex and counsel for Deponents an email providing an estimate for the work that had been discussed among all of them on January 31, 2017. (ECF 499-1, Ex. H). The estimate addressed: (1) collection of 5 custodian mailboxes from an Exchange serve on-site in Louisville, KY (assuming 5 GB of email per mailbox); (2) processing the colleted mailboxes and running a set of keywords against the data set; (3) research of and extraction/exporting of data from Macola and Commence databases; and (4) consulting on the keyword list and communication throughout. *Id.*

On February 3, 2017, counsel for Apex emailed counsel for Deponents and offered for Apex to pay 100% of the cost of hiring One Source Discovery to access to the electronic documents. *See* (ECF 486-3, Ex. H). For Macola and Commence, Apex proposed that Apex (Zalani) work with the expert to find out what is available and in what format it could be produced. *Id.* For the emails, Apex proposed providing the search terms/custodian list to the expert to come up with a protocol, including timing, to narrow the hits and then to have Deponents review the results for relevance and privilege. *Id.* Counsel for Apex proposed that the emails be shared with her on an attorneys-eyes-only basis to agree on the designations. *Id.*

On February 7, 2017, counsel for Deponents responded that Deponents were reviewing the proposal. *See* (ECF 486-3, Ex. H). The same date, counsel for Apex asked for clarification on when a decision would be made. *Id*. Counsel for Deponents responded that he expected to provide a response either that same day or the following day. Apex represents that counsel for Deponents neither responded nor made a counteroffer, leading to Apex filing the instant Motion to Compel, followed by Deponents filing the instant Motion for Protective Order.

## ANALYSIS

In the Motion to Compel, Apex asks the Court to order Deponents to respond to the nonparty subpoenas in full, making no reference to the January 5, 2017 proposed modifications to the subpoenas. Apex asserts that it has addressed both of the primary objections Deponents raised in their July 6, 2016 response to the subpoenas—undue burden and disclosure of confidentiality/proprietary information. First, Apex contends that it has addressed the undue burden objection by agreeing to pay for the ESI searches to be done by a third party vendor. Second, as to confidentiality, Apex argues that the majority of the documents sought are Finos records that are neither confidential nor proprietary because Apex was a 50% owner of Finos throughout the life of Finos (which dissolved in 2013). And, Apex has proposed that Deponents designate documents as Attorneys Eyes Only as provided for in the Protective Order in this case. Believing that these proposals accommodate Deponents' objections, Apex asks for an order that Deponents comply with the June 1, 2016 subpoenas by permitting third party vendor One Source Discovery to obtain access to the Finos records on the Macola and Commence databases and to search the emails of the custodians identified in Exhibit G.

In their Motion for Protective Order, filed in response to Apex's Motion to Compel, Deponents ask for an order relieving them of any obligation to further respond to the subpoenas in order to protect them from annoyance, oppression, and undue burden and expense, arguing that the documents sought are not relevant to the claims and/or defenses in this litigation and contending that a number of the requests appear to have been issued for the improper purpose of seeking documents to support an unidentified claim against one or more Deponents. Deponents also argue that compliance with the subpoenas would impose a significant burden of expense, inconvenience, and business disruption, given that Tabler is a small company with six employees and that Eric Boggess has already expended significant time and effort making the 27 bankers boxes of documents available for Apex to inspect. Deponents ask the Court to enter an order eliminating any further obligation to respond to the subpoenas and barring the parties in this litigation from serving any additional non-party discovery on Deponents.

Federal Rule of Civil Procedure 45(d) provides that a person who receives a subpoena "may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested." Fed. R. Civ. P. 45(d)(2)(B). This "objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." *Id*. If an objection is made, "[a]t any time, . . . the serving party may move the court . . . for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

Federal Rule of Civil Procedure 45(d)(3) provides that, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . or subjects a person to undue

burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). In addition, the "court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information . . . ." Fed. R. Civ. P. 45(d)(3)(B)(i).

As to the production of "documents," Rule 45(e)(1)(A) provides: "A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand." Fed. R. Civ. P. 45(e)(1)(A).

As to the production of "electronically stored information," the rule provides: "If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms *in which it is ordinarily maintained or in a reasonably usable form or forms*." Fed. R. Civ. P. 45(e)(1)(B) (emphasis added). In addition, "[t]he person responding need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 45(e)(1)(C). Finally, as to "inaccessible electronically stored information":

> The person responding need not provide discovery of electronically stored information from sources *that the person identifies as not reasonably accessible because of undue burden or cost*. On motion to compel discovery or for a protective order, *the person responding must show that the information is not reasonably accessible because of undue burden or cost.* If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 45(e)(1)(D) (emphasis added).

Federal Rule of Civil Procedure 26(b)(2)(C) provides for protective orders:

> **(C) When Required.** On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> **(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Federal Rule of Civil Procedure 26(c) provides that any person from whom discovery is sought may seek a protective order from the court in which the action is pending to protect the person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

As an initial matter, based on the declaration of Robert A. Marshall (Deponent's Kentucky counsel) and emails submitted as exhibits to the motions, the Court finds that Deponents' July 6, 2016 response to the subpoenas was timely. In his declaration, Attorney Marshall avers that counsel for Apex granted Deponents an extension of time to July 6, 2016, to respond to the subpoenas. Moreover, Apex accepted service of Deponents' response and objections on July 6, 2016, subsequently served its own response to the objections, and engaged in negotiations regarding the subpoena production, all without raising any argument that Deponents' response (and objections) was untimely. Thus, the various objections raised by Deponents in the July 6, 2016 response are properly before the Court as to the requests *to which the objections were made*, such as objections based on information that is confidential, proprietary, and a trade secret; that the information is not readily accessible and may not be available; that the request does not identify a time frame; that the request does not identify other information necessary for a response; that the information is not relevant; that the records are not in the possession of Deponents; and that the information is already in Apex's possession.

Second, the Court finds that Apex and Deponents made significant strides in resolving this discovery dispute through months of negotiations. The Court **ORDERS** that both Apex and Deponents honor the results of those negotiations as set out below. In other words, representations and concessions made since the service of the subpoenas in June 2016 will not be permitted to be withdrawn. Therefore, based on Apex's January 5, 2017 email and modifications to the subpoenas and based on other email communications between counsel, the Court **ORDERS** that:

1. Requests Nos. 12, 13, 14, 27, 28, 30, 32, and 33 are **WITHDRAWN**;

2. Requests Nos. 1-3, 11, 25, and 31 are limited in time from 2008 through 2012;

3. Requests Nos. 4 and 5 are limited in time from 2006 through 2012;

4. Request No. 24 is limited in time from 2009 through 2012;

5. Requests Nos. 16 and 17 are limited to eight custodians—Larry Krock, Christie Downs, Buddie Miller, Barb/Barbara Boggess, Val Deehan, Eric Boggess, Jim Boggess, and Lloyd Kantner—and the search terms "Chemworld," "Atul," "Manoj," "Shabnom," "Daquila," and "Eagle";

6. Request No. 18 is limited to the same eight custodians—Larry Krock, Christie Downs, Buddie Miller, Barb/Barbara Boggess, Val Deehan, Eric Boggess, Jim Boggess, and Lloyd Kantner—and the search terms "Chemworld," "Atul," "Manoj," and "Shabnom";

7. Requests No. 19 and 20 are limited to the same eight custodians—Larry Krock, Christie Downs, Buddie Miller, Barb/Barbara Boggess, Val Deehan, Eric Boggess, Jim Boggess, and Lloyd Kantner—and the search terms "Bykowski," "Deehan," "Molnar" for Request No. 19 and "Atul," "Manoj," and "Shabnom" for Request No. 20;

8. Request No. 26 is limited to seven named custodians—Larry Krock, Christie Downs, Buddie Miller, Barb/Barbara Boggess, Val Deehan, Eric Boggess, and Jim Boggess—and the search phrases "pigment and Paul," "pigment and Geri," "pigment and GB," "pigment and G.B.," and "pigment and Bykowski";

9. For all requests for which the time period is not listed above, the end date is March 31, 2013;

10.      Request No. 25 is limited to account for those instances in which Finos was involved in marketing and selling pigments.

11.      Deponents are to consider Apex's January 5, 2017 proposal that Requests Nos. 7, 26, and 31 be withdrawn if Deponents execute the declaration proposed by Apex and are to provide Apex with a specific response to this proposal within **seven days** of this Opinion and Order.[3]

In addition, the Court **ORDERS** Deponents to make the Macola and Commence software programs and emails available for searching for Finos accounting and sales information responsive to the subpoenas consistent with the terms set forth in this Opinion and Order. Beginning with Deponents' original July 6, 2016 subpoena response, Deponents did not object to the production of electronically stored information ("ESI") for sales and accounting information from the Macola and Commence programs and continued to negotiate the production of the information contained in those programs through February 7, 2017. Deponents cannot now refuse to produce the ESI. In their original July 6, 2016 response to Requests Nos. 3, 4, 5, 6, 10, 11, 12, 13, 15, and 19, Deponents *agreed* to produce electronic records if Apex would pay for an outside vendor, which Apex is willing to do. For example, Request No. 3 provides:

> For the period [2008–2012], all purchase orders received by Finos and corresponding shipping and invoicing records. To the extent orders were not filled, all documents related to the reasons the orders were not filled, including but not limited to correspondence, emails, memoranda, and call reports.

(ECF 493-6, Ex. 6). Deponents' July 6, 2016 objection provides:

> It is my understanding that Finos sales records exist such that the dollar value of products sold to each customer can be assembled *electronically*. Please agree in writing that if we

---

[3] Apex's proposal also included Request No. 29. However, as set forth below, the Court sustains Deponents' July 6, 2016 objection to Request No. 29 based on relevance.

are able to have a third party generate this information, you will be responsible for all expenses incurred in connection therewith.

(ECF 486-2, Ex. D, p. 2) (emphasis added). A similar statement was made regarding the use of a third party vendor to access ESI in response to Requests Nos. 4, 5, 6, 10, 11, 12, 13, 15, and 19. This constituted an invitation by Deponents for Apex to engage and pay for a third party vendor, which Apex has agreed to do.

In their reply brief, Deponents assert that "one necessary way that Apex would need to lighten Deponent's compliance burden was to pay any costs of a third party vendor. Deponents *never* said that this alone would sufficiently contain Deponents' compliance burden and expense because it will not." (ECF 506, p. 10). This argument is specious because Deponents also never said that payment for the third party vendor was *not* sufficient and, in fact, implied the opposite through their actions. As late as February 2017, Deponents were actively negotiating the discovery of ESI as evidenced by the February 1, 2017 estimate provided by One Source Discovery following a joint meeting with Apex and Deponents a day earlier. The estimate proposed examining both the Macola and Commence databases and producing information from both. Although Deponents raised concerns in December 2016 that allowing Apex to access Macola and Commence would allow access to confidential and proprietary information of Tabler and NeoNos Research, Deponents did not raise additional burden arguments. *See* (ECF 486-3, Ex. F). The parties have already agreed that One Source Discovery, located in Louisville, Kentucky, will be the third party vendor to conduct the review and retrieval of materials from Macola and Commence, and Apex has agreed to pay all related expenses.

Deponents argue that Eric Boggess' production of 27 boxes of paper documents demonstrates Deponents' good faith in responding to the subpoenas; it is not good faith to first represent in the July 6, 2016 responses that ESI would be produced if Apex paid for the third party vendor and then to later unilaterally produce paper documents instead. Moreover, Rule 45(e)(1)(B) provides that, if Apex did not specify a form for producing the ESI, Deponents "must produce it in a form or forms *in which it is ordinarily maintained or in a reasonably usable form or forms.*" Fed. R. Civ. P. 45(e)(1)(B) (emphasis added). This provision of Rule 45(e) is identical to Federal Rule of Civil Procedure 34(b)(2)(E)(ii) for requests to produce served on a party. Although not contained in the 2006 advisory committee comment to Rule 45(e), the 2006 comment to Rule 34(b) provides, in relevant part:

> The production of electronically stored information should be subject to comparable requirements to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party. Rule 34(b) is amended to ensure similar protection for electronically stored information.

> . . . .

> The rule does not require a party to produce electronically stored information in the form in which it is ordinarily maintained, as long as it is produced in a reasonably usable form. *But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation.* If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment (emphasis added).

Deponents assert, based on Eric Boggesses' representations, that the paper documents are in a reasonably usable form. However, by producing the information on paper, Deponents have not produced

the information, which is normally searchable by electronic means in Macola and Commence, in a form that remains searchable by electronic means. Rather, Deponents have "removed" the feature of searching by electronic means. For this very reason, Apex has maintained throughout the negotiations that the paper documents are not in a reasonably usable form because "reviewing electronic versions via search protocols would be significantly more efficient." (ECF 486-3, Ex. F). Apex reasons that sales and accounting records can be more easily viewed and used as Excel spreadsheets but are rendered practically useless as multi-page printouts. Apex is also concerned that the paper documents are not complete. Indeed, it appears from counsel's email that the boxes of paper documents are only duplicates from the Macola system and apparently do not include information from the Commence system. But, even if documents from Commence are included, there is no indication that the records are as complete as the ESI. The Court addresses Deponents' concerns regarding an undue burden on Eric Boggess below.

Third, Deponents assert throughout their briefs that most of the Requests seek irrelevant information, identifying Requests Nos. 1-14, 16-19, 21-26, and 28-33. The Court finds that Deponents waived any objection based on relevance except as to Requests No. 28, 29, 31, and 32 because those are the only four Requests to which Deponents objected based on relevance in their July 6, 2016 response. *See, e.g.*, (ECF 486-2, Ex. D, No. 29 ("This has nothing to do with your litigation.")).[4] As noted above,

---

[4] Apex argues waiver for the first time in its combined brief in reply to its own Motion to Compel and in response to the Motion for Protective Order. Deponents argue in their reply in support of the Motion for Protective Order that Apex itself waived arguing waiver by not raising it in the opening Motion to Compel. The Court disagrees. Apex could not have raised waiver of the relevance objection in its opening brief because it did not know that Deponents would assert a relevance objection until Deponents filed their Motion for Protective Order. Apex's waiver argument brought in its reply/response brief is to the new objections raised by Deponents in their motion/response brief. Moreover, the Court permitted additional briefing on the instant motions; all movants have had an opportunity to assert all arguments.

Apex also did not waive any right to enforce the subpoenas by attempting first to negotiate informally to obtain Deponents' compliance. Unlike Rule 45(d)(3), which requires that a motion to quash be "timely," Fed. R. Civ. P. 45(d)(3)(A), a motion to compel under Rule 45 may be made "at any time," Fed. R. Civ. P. 45(d)(2)(B)(i).

Requests Nos. 28 and 32 have been withdrawn by Apex. Therefore, the Court considers Deponents' relevance objection as to Requests Nos. 29 and 31 only. The Court declines Deponents' request to excuse their failure to raise a relevance objection as to any other Requests because the failure to raise all relevance objections at the same time—on July 6, 2016—impacted the course of negotiations. For example, although Deponents now argue that Request No. 16 is not relevant, in the July 6, 2016 response to Request No. 16, Deponents wrote: "Agrees to produce responsive documents through 4/1/13." (ECF 493-6). Deponents necessarily considered the relevance of the information sought in all the Requests when drafting their July 6, 2016 response, as evidenced by the four relevance objections that were made; yet, Deponents did not object to any other Requests based on relevance. There is no indication in the subsequent email exchanges between counsel for Apex and Deponents' Chicago counsel that Deponents objected to any of the other Requests based on relevance. Thus, any objection based on relevance is waived as to all but Requests Nos. 29 and 31. The Court considers each in turn.

Request No. 29 provides:

29. Records of all sales made by Tabler of any pigments and/or additives to customers of Finos products, as well as the records of the related commissions paid and to whom they were paid. The records should include what products were sold at what quantity to which customers.

**Objection**: No time frame is given. This has nothing to do with your litigation. Rather, this has to do with confidential, proprietary business information regarding Tabler Company and will not be disclosed.

**Response to Objection**: The time frame is during the time Finos was operating. It is relevant because if Paul Bykowski was involved, or knew about, Tabler selling to Finos customers but not running those sales through Finos, it would have violated his contractual and fiduciary obligations.

(ECF 486-2, Ex. D; ECF 493-6, Ex. 6). The Court **SUSTAINS** the objection to Request No. 29 based

on relevance. There is no allegation in the Second Amended Consolidated Complaint (which notably was

filed several months after this objection was raised) that Bykowski breached his contractual and fiduciary

duties to Apex by any alleged knowledge that *Tabler* was selling to customers directly and not through

Finos. Moreover, Apex does not explain why Tabler could not sell other products directly to customers

of Finos just because some products Tabler sold to those customers went through Finos. The Court

**ORDERS** that Deponents need not answer Request No. 29.

Request No. 31 provides:

31. All communications to Tabler personnel to discontinue sales and/or the promotion of Finos products and directing them on where to transition customers.

**Objection:** No time frame is given. This has nothing to do with your litigation. Rather, this has to do with confidential, proprietary business information regarding Tabler Company and will not be disclosed.

**Response to Objection**: The time frame would be during the period Finos was operational through December 2013. Mr. Zalani does not possess information from Tabler.

This information is relevant because one of the major issues in this litigation is Mr. Bykowski using Apex assets to compete for former customers of Finos. Communications these customers received regarding where to direct future business is thus relevant. Communications to customers is not confidential as by definition it was published.

(ECF 486-2, Ex. D; ECF 493-6, Ex. 6). The Court **OVERRULES** the relevance objection as to Request

No. 31 because Apex alleges in the Second Amended Consolidated Complaint that Tabler sold chemicals

on behalf of Finos. Thus, any communication to Tabler personnel (by Bykowski or someone else) to

discontinue sales or promotion of Finos products and directing them where to transition customers is

relevant because it may or may not show that Bykowski was usurping color certification business opportunities from Apex for himself.

Next, the Court addresses Deponents' assertion that Apex served the subpoenas for the improper purpose of seeking documents to support some unidentified claim against one or more Deponents. This argument is not well taken. This position was not expressed in Deponents' July 6, 2016 response. And, based on the communications submitted to the Court, at no time prior to the instant Motion for Protective Order did Deponents assert or even intimate to Apex that they suspected an improper purpose. Moreover, there is no factual basis for this assertion beyond Deponents' speculation.

Finally, Deponents argue strenuously throughout the briefs that the subpoenas create the undue burdens of expense, inconvenience, and business disruption, to which the Court should be especially sensitive in light of Deponents' non-party status. Deponents argue that the 34 separate document requests, over a ten-year period, "essentially seek every single document in the Deponents' possession relating to Finos, Finos' interactions with Tabler, Apex, Bykowski, Chemworld, and numerous other subjects." (ECF 493, p. 3). Deponents argue that the requests are not tailored or targeted and that this is an abuse of the third party subpoena process.

Throughout the correspondence between counsel to this dispute, beginning with Apex's July 25, 2016 response to Deponent's objections, Apex has articulated its intent to minimize the burden on Deponents. *See* (ECF 493-6, Ex. 6 ("We are in agreement that your client should be minimally burdened.")). And, a significant portion of the burden on Deponents has been lessened with the January 5, 2017 modifications, which the Court adopted above, including the withdrawal of eight Requests and the

substantial narrowing of the email searches for six of the Requests (i.e. Requests Nos. 16-20, 26). The objection to Request No. 29 has also been sustained.

As for the searches of the Macola and Commence software, the Court finds that Deponents have not met their burden of showing that producing the responsive information stored in the Macola and Commence programs is not readily accessible due to undue burden or cost because One Source Discovery has not yet had an opportunity to review the databases. *See* Fed. R. Civ. P. 45(e)(1)(D). The Court acknowledges that the Macola database stores not only Finos legacy business data but also stores Tabler and NeoNos Research data, including data generated since Finos' dissolution in 2013. Eric Boggess has provided a declaration that "[t]he Macola Progression program [used to maintain accounting records] does not have features that would allow the legacy Finos data to be easily segregated from Tabler and NeoNos Research's business data contained within the program."(ECF 493-1, Ex. 1, ¶ 6). The Court also recognizes that Eric Boggess avers that the Commence program, "which is a type of database toolkit software that allows the user to manage customer data, track sales and assets, manage projects and monitor expenses and billing," "contains certain Finos legacy sales data, but that data is commingled with (and cannot be easily separated from) Tabler and/or NeoNos Research data." *Id*. at ¶ 7. However, just because the data cannot be "easily" segregated does not mean that it cannot in fact be segregated or filtered, and Apex has agreed to pay the cost of One Source Discovery gathering and sorting the information. One Source Discovery appears to believe itself capable of extracting and exporting the Finos data because on February 1, 2017, One Source Discovery emailed counsel for Apex and for Deponents and provided an estimate for (1) collection of 5 custodian mailboxes from an exchange server in Louisville, KY, (2) processing the collected mailboxes and running a set of keywords against the data set, (3) research

24

of and extraction/exporting of data from Macola and Commence databases, and (4) consulting on the keyword list and communication throughout. (ECF 499-2).

As for the emails, Deponents' argument in the briefs that searching the emails would be unduly burdensome is based, in large part, on the search terms that Apex proposed and on Eric Boggess' determination that those search terms would produce tens of thousands of results. However, Eric Boggess provides no explanation of how he ran those email searches or whether he made any effort to narrow the results. Those search terms can be combined and the searches modified through the cooperation of counsel for Apex and for Deponents in conjunction with One Source Discovery to ensure that a reasonable number of emails are identified for the limited time periods that would not place an undue burden of review on Eric Boggess. The email retrieval process should be dynamic, with the searches being adjusted before a final production. Late in the negotiations, Deponents requested a list of search terms from Apex; it is disingenuous to now refuse any search of the emails. In addition, emails sent to or from Bykowski or other employees of Finos on behalf of Finos are not confidential because Apex was a fifty percent owner of Finos. Therefore, Eric Boggess should be able to set up straightforward protocols to assist him in screening responsive emails that may contain proprietary information of Tabler or NeoNos Research, if any.

As for Deponents' argument that Apex already has some emails, this is not a basis for refusing to respond to the subpoena requests for emails. Deponents may have retained some emails that Zalani has not and likely have others that Zalani never received. And, as for Apex obtaining emails from Defendants, Bykowski "lost" his laptop computer. Apex represents that, although its experts are reviewing Chemworld's emails, earlier indications suggest large numbers of email are missing, and the emails from Deponents may be able to fill in the gaps. The Court **ORDERS** counsel for Apex and counsel for

Deponents to work together with One Source Discovery to respond to the subpoena requests for emails as set forth in this Opinion an Order.

As for Request No. 11, Apex asked that Finos records "showing gross revenues, cost of goods sold and gross profits by product and by customer for each . . . year" be provided in an Excel spreadsheet. (ECF 493-6, Ex. 6). In the original response, Deponents agreed to produce the information if Apex agrees to using a third party vendor to obtain the ESI; Deponents did not object to the request that the information be provided in an Excel Spreadsheet. In the briefing on the instant motions, Deponents offer the Eric Boggess' declaration that converting the raw data to Excel spreadsheets would be time consuming and burdensome. Because this electronically stored information is not ordinarily kept in Excel spreadsheet format and because converting it would be time consuming and burdensome, the Court **ORDERS** that Deponents do not need to produce the information sought in Request No. 11 in Excel spreadsheet format but rather can produce it in the form in which it is ordinarily kept. However, should Deponents determine, with the assistance of One Source Discovery, that production of this information in an Excel spreadsheet is preferable, perhaps to safeguard proprietary code written by Eric Boggess to modify the Commence program, Deponents may nevertheless choose to produce the information in Excel spreadsheet format despite the objection.

Thus, the remaining question is one of burden on Eric Boggess, a non party, in terms of the time he will have to spend reviewing the information gathered by One Source Discovery before it is turned over to Apex. "In the context of third party discovery, courts should be especially careful in protecting the parties from excessive or oppressive discovery." *Moore v. PlasmaCare, Inc.*, No. 1:11-CV-1090, 2012 WL 602623, at *2 (S.D. Ind. Feb. 23, 2012). Apex says the burden is alleviated because Apex has offered

to pay for the vendor. Payment of the vendor alone does not address the potential burden of time and lost business to Eric Boggess who will still have to review the ESI for responsiveness to the subpoenas and for confidential and/or privileged information.

Nevertheless, Apex is not able to obtain much of this information from other sources. The burden of time on Eric Boggess is lessened by time frame restrictions and by Eric Boggess identifying other data filters that One Source Discovery can use to narrow the database searches to Finos documents at the outset so as to reduce the number of documents that Eric Boggess will have to review to ensure that only Finos and not NeoNos or Tabler documents are being disclosed. This final review should be cursory and superficial given that Eric Boggess will not need to substantively review the Finos documents for proprietary or confidential information.

To assist in this process of minimizing the burden on Eric Boggess, the Court **ORDERS** that the parties use the following guidelines, with appropriate modifications proposed by One Source Discovery to conform to the results of its examination of the Commence and Macola data:

1. Apex and Deponents jointly retain, at Apex's expense, One Source Discovery to examine the Commence and Macola programs to determine the extent to which it is possible to separate the Finos records from those of NeoNos Research & Tabler by first using the search end date of March 31, 2013.

2. Once the records have been narrowed by date, One Source Discovery will attempt to separate Finos records from NeoNos Research and Tabler records using other data filters.

3. If One Source Discovery is unable to identify the Finos records solely through electronic means, they must explain why they are unable to do so.

4. If, however, it is possible to electronically sort *most* of the Finos records from those of NeoNos Research and Tabler electronically with the remainder of the records sorted by One Source Discovery by human action, then they shall do so, after consultation with counsel for Apex and Deponents.

5.  If this manual sorting will require the assistance of Eric Boggess for a limited time period (e.g. no more than 3 hours to assist in identifying client codes or key terms that would allow One Source Discovery to sort and filter the files), then One Source Discovery shall proceed with the approval of Apex.

6.  If the manual sorting requires extensive involvement of Eric Boggess (more than 3 hours), then One Source Discovery shall estimate the number of hours required of Eric Boggess and provide that information to counsel for Apex and for Deponents; counsel for Apex and for Deponents shall discuss the feasibility of Eric Boggess' involvement.

7.  If Apex and Deponents are at an impasse, they may ask the Court for assistance on this limited issue. However, the Court encourages them to work it out. If such an impasse is reached, Apex may wish to consider whether the paper documents already gathered by Deponents would be a sufficient alternative.

As for responsive information that is only available in paper form, the Court **ORDERS** Deponents within **fourteen days** of this Opinion and Order to identify those responses for which only paper documents are responsive and to make those documents available for inspection in Kentucky. If those responsive paper documents are in the 27 bankers boxes already organized by Eric Boggess, further organization or segregation is not necessary as long as Deponents provide Apex with a specific response to each subpoena request and identify exactly where to find the responsive documents as to each request. Deponents have indicated that they do not object to shipping the documents to Apex's attorneys for review or to securely providing electronically scanned duplicates at Apex's expense. The Court **ORDERS** Apex to communicate to Deponents within **seven days** of Deponents' communication regarding its preferred method for reviewing the responsive paper documents.

Across all of the subpoena requests, if there are Tabler documents from the identified time period that are responsive, Deponents can avail themselves of the Protective Order in place in this case and the Attorneys Eyes Only designation. The Court is cognizant of the fact that both Tabler and NeoNos Research

currently compete with Apex and with the Chemworld Defendants and Bykowski by selling and/or promoting colorants and special effect pigments to the plastics and coatings industries.

A final matter is Eric Boggess' concern about "proprietary code" that he wrote to customize the Commence program, which Deponents say customizes the software in a commercially-valuable manner. Tabler has sold this proprietary customization to third parties in the past and may do so again. Deponents argue that "[t]here is no way to provide a third party with access to the Commence program containing Finos' legacy sales data without allowing him or her to view this proprietary code." (ECF 493, p. 9). The parties offer no indication that this concern was raised with One Source Discovery during the January 31, 2017 meeting. It also does not appear that Deponents are concerned about One Source Discovery viewing the proprietary code but rather they are concerned that Apex and/or Defendants will view the proprietary code. This concern can be remedied by One Source Discovery in the manner that it delivers the information gathered from the Commence program, whether in an Excel spreadsheet or some other format that does not reveal Boggess' proprietary code. The Court **ORDERS** counsel for Apex and Deponents to discuss this concern with One Source Discovery to protect the proprietary nature of Eric Boggess' customized code in the production of ESI from Commence. In other words, they must find a way to turn over the information without turning over the proprietary code as well.

As for Apex's proposal that Deponents be given one week to review the ESI collected by One Source Discovery, the Court finds that period of time to be unreasonably short. The Court **ORDERS** that Deponents shall have **<u>three weeks</u>** to review the information produced by One Source Discovery. Because Eric Boggess may already be involved to some limited extent in the collection of the ESI, the review process should not be as time-consuming.

The Court denies Deponents' request to enter an order preventing the parties in this case from issuing any further nonparty discovery requests of Deponents.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Enforce Third Party Subpoenas [DE 486] and **GRANTS in part** and **DENIES in part** Non-Parties Eric and James Boggess and Wm. B. Tabler Co., Inc.'s Motion for a Protective Order [DE 492].[5] The Court **ORDERS** Apex and Deponents to comply with the terms of this Opinion and Order to execute Deponents' response to the subpoenas. The Court does not award reasonable costs incurred in bringing these motions to any of the parties to the motions.

SO ORDERED 25th day of May, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

---

[5] Because neither Apex in the Motion to Compel nor Deponents in the Motion for Protective Order asks for a Request-by-Request ruling on Deponents' July 6, 2016 objections to the subpoena Requests, the Court declines to provide one other than as set forth in this Opinion and Order.