# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| APEX COLORS, INC., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:14-CV-273-PRC |
| ) | |
| CHEMWORLD INTERNATIONAL LIMITED, ) | |
| INC., CHEMWORLD INTERNATIONAL ) | |
| LIMITED, LLC, ATUL MODI, MANOJ MODI, ) | |
| and PAUL BYKOWSKI, ) | |
|     Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on Non-Parties Eric and James Boggess and Wm. B. Tabler Co., Inc.'s Motion for Clarification of the Court's May 25, 2017 Order [DE 536], filed by non-party records deponents Eric Boggess, James Boggess, and Wm. B. Tabler Co., Inc. (collectively "Deponents") on September 19, 2017. Plaintiff Apex Colors, Inc. ("Apex") filed a response on September 28, 2017, Deponents filed a reply on October 3, 2017, Apex filed a sur-reply on October 13, 2017, and Deponents filed a sur-response on October 18, 2017.

On May 25, 2017, the Court issued an Opinion and Order on Plaintiff's Motion to Enforce Third Party Subpoenas and on Deponents' Motion for a Protective Order. Therein, the Court enforced representations and concessions that had already been made by the parties, limited other requests by date, custodian, search terms and/or subject matter, and sustained the objection to Request No. 29. *See* (ECF 512, pp. 16-22). As to the search of emails, the Court wrote, in relevant part:

> Those search terms can be combined and the searches modified through the cooperation of counsel for Apex and for Deponents in conjunction with One Source Discovery to ensure *that a reasonable number of emails* are identified for the limited time periods that *would not place an undue burden of review on Eric Boggess*. The email retrieval process should be *dynamic*, with the *searches being adjusted* before

> a final production. Late in the negotiations, Deponents requested a list of search terms from Apex; it is disingenuous to now refuse any search of the emails. In addition, *emails sent to or from Bykowski or other employees of Finos on behalf of Finos are not confidential* because Apex was a fifty percent owner of Finos. Therefore, Eric Boggess should be able to set up straightforward protocols to assist him in screening responsive emails that may contain proprietary information of Tabler or NeoNos Research, if any.

(ECF 512, p. 25) (emphasis added). The Court ordered counsel for Apex and counsel for Deponents to work together with One Source Discovery to respond to the subpoena requests for emails.

As to the issue of burden on Eric Boggess, a non party, the Court wrote, "Thus, the remaining question is one of burden on Eric Boggess, a non party, in terms of the time he will have to spend reviewing the information gathered by One Source Discovery before it is turned over to Apex. 'In the context of third party discovery, courts should be especially careful in protecting the parties from excessive or oppressive discovery.'" (ECF 512, p. 26) (quoting *Moore v. PlasmaCare, Inc.*, No. 1:11-CV-1090, 2012 WL 602623, at *2 (S.D. Ind. Feb. 23, 2012)). The Court ordered that "Deponents shall have three weeks to review the information produced by One Source Discovery." *Id.* at p. 29.

After a series of negotiations, counsel for Apex, counsel for Deponents, and One Source Discovery ("One Source") executed a Dual Engagement Letter for Electronic Discovery Services dated June 29, 2017, governing the services to be performed by One Source as outlined in the Court's May 25, 2017 Opinion and Order, with Appendix A providing the specific actions to be taken by One Source. The Engagement Letter provides that "One Source shall execute an initial keyword search with date filters agreed upon by Plaintiff and Deponents against the collected mailboxes utilizing keywords and other filtering mechanisms agreed upon by Plaintiff and Deponents." (ECF 536, Ex. 1, App'x A, ¶ 6).

Following the execution of the Dual Engagement Letter, One Source collected emails dated on or prior to March 31, 2013, for eight email custodians on a Tabler server. However, Apex and Deponents were then unable to agree on initial search terms.

On August 1, 2017, Deponents proposed an initial set of search terms to Apex. (ECF 536-4, p. 7-8). On August 2, 2017, Apex responded, disagreeing with the new set of search terms, asserting its desire to have the original January 2017 search terms run and raising concerns about delay. *Id*. at 6-7. On August 2, 2017, Deponents responded, noting that the dual engagement letter provided for the parties to agree on search terms for an initial search. *Id*. at 6. Nevertheless, to speed up the process, Deponents agreed to allow One Source to generate a "hit list" showing the number of results for each custodian and term in Apex's initial proposed terms but maintained their position that the initial list of search terms would need to be significantly "modified, narrowed, and/or combined with additional limiting terms before running any final search terms." *Id*. at p. 6.

On August 3, 2017, One Source confirmed that it would run the search of Apex's original search terms and provide a "hit list." *Id.* at p. 5. One Source provided the "hit list" on August 4, 2017, which identified approximately 78,000 email messages, with a total of 97,639 responsive items when attachments were included. (ECF 536-3, p. 7). In response to Deponents' inquiry about who should propose the next set of search terms, on August 6, 2017, Apex indicated that it would propose the next set of search terms to attempt to limit the production. *Id*. at 7.

On August 8, 2017, Deponents proposed search term modifications, which Apex rejected because the proposal was not a narrowing of Apex's search terms but rather an entirely new set of terms. The August 8, 2017 searches proposed by Deponents were based on the terms "bykowski,"

3

"chemworld," and "pigment," each in combination with other terms. *See* (ECF 536-4). This list was too narrow for Apex.

On August 9 and 11, 2017, Apex asked Deponents to identify the total number of emails they consider reasonable for Eric Boggess to review in three weeks. *Id*. at 5. On August 11, 2017, Deponents responded that the total number of documents depends on whether One Source would supply Eric Boggess with a review platform on which to review the emails. *Id*. at 4. Without a review platform, Deponents proposed a few hundred emails as a reasonable number. With a review platform, Deponents proposed an approximate review rate of sixty emails per hour. *Id*. at 4. Deponents noted that Eric Boggess had not previously conducted electronic document review, and, thus, his rate may be slower. *Id*. Deponents proposed that Eric Boggess spend no more than fifteen hours reviewing the emails in the three-week period, as that time would be in addition to his time working as President and primary salesperson of Tabler, a small business with six employees. *Id*. at 5. Thus, Deponents proposed that Eric Boggess could review approximately 900 documents in 15 hours at a rate of 60 documents an hour. *Id*. On August 12, 2017, Apex responded that the production of 900 emails is not reasonable, that Apex is the party in need of the information, and commented that this is an evolving process. *Id*. at 3-4. Apex also provided One Source with a color coded search term list to further reduce the search results. *See* (ECF 543-2).

On August 15, 2017, Deponents asked Apex how many documents Apex feels is reasonable for Eric Boggess to review in light of its rejection of Deponents' proposal of 900 documents. (ECF 536-3, p. 2). Deponents agreed to allow One Source to run a subsequent "hit list" based on Apex's newest proposed search term list, but noted that they did not agree that the terms and limitations are appropriate or reasonable. *Id*. at 3. For example, Deponents object to the search term "pigment" as

a stand alone search term. *Id*. Deponents also asked for clarification as to whether Apex would allow One Source to run a hit list for the term combinations Deponents had proposed. *Id*.

On August 16, 2017, One Source provided another "hit list" for Apex's proposed modified terms, yielding more than 27,000 email families. (ECF 536-6).

On August 23, 2017, counsel for Apex noted that her legal assistant could review, per day, 1000 previously unseen emails on a foreign topic (a rate of 125 per hour) and suggested that Eric Boggess should be able to review his own companies' emails rather quickly. *Id*. at p. 2. Apex noted that the emails had been reduced to 29,000, which Apex believed to be reasonable. *Id*. However, Apex agreed to cut additional terms and took the position that the number of emails yielded by the removal of those terms should be the final production of emails to be reviewed by Eric Boggess. *Id*. Apex took the position that, because privileged documents should have already been removed by the exclusion of certain attorney names, any documents Eric Boggess identifies to not be produced should be made available to counsel for Apex for in camera review. *Id*. Apex reasoned that Eric Boggess is not in a position to determine what information is relevant to this litigation. *Id*.

On August 28, 2017, One Source produced search results based on Apex's newest proposal, which reduced the emails to 23,400. (ECF 536-5, p. 3); *see also* (ECF 536-7) (One Source 8/28/2017 "Hit List"). On September 7, 2017, One Source clarified that the 23,400 emails nevertheless represented a total of 37,700 documents when emails and attached documents were counted together. *Id*. at 2.

On September 29, 2017, One Source responded to email questions from counsel for Deponents and stated that, in its experience with email collections of this type and volume, a review platform is typically used. One Source confirmed that the responsive emails identified in the review

5

platform by Eric Boggess can be produced in native format to Apex without the need to use the review platform. The emails are loaded in their native format into the review platform as well (so there is no charge associated with any conversion). If Eric Boggess does not review the emails in a review platform, there would be a $150/hour fee for One Source to process the production to Apex to remove the privileged or nonresponsive documents; One Source estimated that this would take a few hours, depending on how many items need to be removed, how they are identified by Eric Boggess, and whether redactions are necessary.

On September 29, 2017, Deponents asked One Source for the total number of email families and total number of documents responsive to the "Proposed Term Combinations for Second 'Hit' List" proposed by Deponents on August 8, 2017. *See* (ECF 545-2, p. 2-3). On October 2, 2017, One Source responded,

> After removing the 4 terms from the Apex search term set, the total number of responsive parent emails after duplication is 16,357. When you include the attachments to those emails, that number is 31,680.
>
> The total number of responsive parent emails after deduplication to the search set [Deponents] provided is 2,482. When you include the attachments to those emails, that number is 4,815.

(ECF 545-2, p. 2). On October 17, 2017, One Source clarified that the charge is $100 GB/month to host the emails and documents on a review platform.

**ANALYSIS**

Plaintiff Apex and non-party Deponents are at an impasse on a reasonable number of emails and attached documents for Eric Boggess to review over a three-week period prior to disclosing the emails in response to the Non Party Subpoena served by Apex. After all briefing, Apex now seeks review by Eric Boggess and production of 16,327 emails with a total of 31,680 documents from the

most recent search results. Deponents assert that 1,000 total documents is a reasonable number for Eric Boggess to review at a rate of 60 documents per hour for fifteen hours total over the three-week period.

In the instant motion, Deponents ask the Court to enter an order clarifying that the parties must work together to agree on search terms that generate a significantly smaller number of resulting emails that can reasonably be reviewed by Eric Boggess within a three-week period without that review imposing an undue burden in terms of both time and expense on Eric Boggess, who is the head of a small business from which he cannot afford to absent himself. Deponents also ask the Court to provide the parties with guidance as to the maximum number of documents that should result from the final e-mail search terms. Finally, Deponents ask the Court to clarify that One Source should, at Apex's expense, provide Eric Boggess with a standard e-discovery review platform to conduct his review of the e-mails ultimately resulting from the final search terms. Apex agrees that clarification is necessary on all three issues.

Federal Rule of Civil Procedure 45(d)(1) provides:

(d) Protecting a Person Subject to a Subpoena; Enforcement.
> (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1). The Court considers each of the issues in turn.

*1.     Narrowing the Search Terms*

The parties have already agreed to remove from any final search documents containing certain terms that were likely to be privileged. However, Deponents continue to have a legitimate concern about not disclosing privileged and confidential material to competitors through this email search and production.

Deponents argue that the search terms Apex continues to demand are not reasonably targeted to locate responsive Finos-related documents because the vast majority of the terms are not linked with other limiting terms. Rather, Deponents argue that Apex's list includes generic words such as pigment, qualify, certificate, accurate, and polymer with no limiting terms and one-word terms targeted at company names such as AOC, Clariant, Holland, Ferro, Teknor, and Techmer, which are companies with which Tabler conducted significant business unrelated to Finos during the relevant time periods. Tabler represents that its revenue was more than ten times larger than Finos' revenue at all relevant times. (ECF 536, p. 5). Thus, Deponents reason that searches using these terms are more likely to produce documents that relate to Tabler business unrelated to Finos business.

Apex argues that Deponents are not in a position to understand the hard choices Apex has to make in winnowing the emails. For example, Apex represents that it has a few emails that contradict the Chemworld Defendants' position that they were uninterested in pursuing pigments; Apex represents that the emails show that Finos was interested in entering the pigments market. Therefore, Apex contends that the emails of Larry Krock, Eric Boggess, and other custodians on the subject of pigments has taken on new importance; and the limited search terms proposed by Deponents of pigments with the terms "paul, geri, gb, g.b., and bykowski" would be too limited.

Apex contends that any email in which the custodians were discussing pigments would be relevant to this defense.

First, the Court **ORDERS** Apex and Deponents to direct One Source to run a "sub-search" of the current 16,357 emails for the terms *bykowski* OR *paulb* in the "to," "from," and "cc" e-mail fields and to provide counsel for both Apex and Deponents with the total number of such emails. The Court further **ORDERS** Apex and Deponents to direct One Source to provide *only* counsel for Deponents with a spreadsheet showing the "date," "to," "from," "cc," "subject line" and "fine name" for each e-mail/attachment identified in this "sub-search" so that counsel and Eric Boggess can confirm that these emails are Paul Bykowski's emails. The Court **ORDERS** that those confirmed emails then be produced to Apex in response to the Subpoena.

It is unclear why Apex and Deponents are not constructing targeted searches that address each of the requests in the Non Party Subpoena that seek emails. This is especially true given that the Court gave specific time parameters for many of the Requests. Although there is an "end-date" for the searches being conducted by One Source, it does not appear that the parties have identified any "start date" to further limit the time frame of the emails for each set of searches addressing each Request. For example, Requests 2 and 3 are to begin in 2008, where as Requests 4 and 5 for Solvent Red 24 and Solvent Red 297 are limited from 2006-2012. The Court orders the parties to work together to limit the searches in a logical and practical way (i.e. each side must be flexible) based on the date restrictions previously ordered by the Court.

In addition, the Court ordered limitations and modifications specific to certain Requests. For example, there are two requests for production addressing "pigments," Requests No. 25 and 26. Request No. 25 provides:

9

> 25. From the time of Finos' inception through its dissolution, all documents related to the actual or potential procurement, marketing and/or sales of pigments and other additives, including but not limited to all communications with Shyam Zalani, Paul Bykowski and any person associated with Indace.

(ECF 486-1).In the May 25, 2017 Opinion and Order, the Court limited Request No. 25 to "account for those instances in which Finos was involved in marketing and selling pigments." (ECF 512, p. 17). Request No. 26 provides:

> 26. All communications between any person associated with Tabler, on the one hand, and Paul Bykowski or any person associated with G.B. Consulting on the other hand, regarding the promotion and sale of pigments and/or other additives.

(ECF 486-1). The Court ordered that Request No. 26 was limited to the search phrases "pigment and Paul," "pigment and Geri," "pigment and GB," "pigment and G.B.," and "pigment and Bykowski" to the emails of seven custodians. (ECF 512, p. 16). The Court orders Apex and Deponents to work together to create targeted searches that use the term "pigment" as well as other limiting terms to get only documents responsive to these Requests.

In general, the Court orders Apex and Deponents to work together to continue to modify, combine, revise and/or narrow the search terms until they reach a reasonable number of documents that Eric Boggess can review, as defined in the following section. The Court suggests that Apex and Deponents consider starting with the search combinations proposed by Deponents with further time and other limitations (such as the exclusion of the names of companies identified by Deponents) to the extent those targeted searches are responsive to specific Requests. The Court expects Apex and Deponents to conduct a specific, term-by-term negotiation to attempt to not only reduce the number of emails resulting from the searches but to do so by purposefully combining search terms to narrow the results to those relevant to the topics sought by Apex in the Subpoena.

*2.     Reasonable Number of Emails to Review*

Next, the Court turns to Deponents' request that the Court set a limit on the total number of documents resulting from the final search terms that Eric Boggess will be required to review. As noted above, Deponents propose 1,000 total documents; Apex requests the current search result of 16,357 emails and 31,680 total documents (emails and attachments).

In ordering the three-week review period, the Court intended for a three-week calendar period, in other words, fifteen business days. If Eric Boggess did nothing else but review 16,357 emails for those 15 business days, which is not reasonable, he would have to review 136 emails an hour for eight hours a day, for fifteen business days. Some research by the Court suggests that a review rate of 60-100 documents an hour may be reasonable for an experienced document reviewer reviewing full-page documents. Approximately half of the emails are Eric Boggess' own correspondence, and a quick glance will tell him whether the email is privileged/confidential and/or relevant. In most instances, a determination as to whether the email is subject to disclosure would also inform his determination of whether any attachments should be disclosed. Things like the subject line of the email and other visual clues will speed up Eric Boggess' ability to efficiently review the emails and attached documents.

The Court finds that, under all the circumstances of this non-party Subpoena, a reasonable number of emails (not total documents) for Eric Boggess to review in the three-week period, *after* the Bykowski emails have been removed, is approximately 1,000 emails, which will likely result in approximately 1,300 total documents. This would require approximately 22 hours of review at a rate of 60 documents per hour, or 10 hours at a rate of 130 per hour. The Court is hopeful that the parties

will engage in a dynamic, interactive process through sampling and winnowing, if necessary, to identify the searches most likely to hit on the relevant documents sought by Apex.

*3.     Review Platform*

Finally, over Apex's objection, the Court finds that it is reasonable to require Apex to pay for One Source to provide Eric Boggess with a Review Platform to review the emails that result from the final search terms to facilitate him marking documents a Confidential or Attorneys Eyes Only. This should be an efficient review process for a non party who is already burdened by this discovery. One Source has represented that, in its experience, a review platform is typically used to allow the reviewer to review and tag the documents for responsiveness and privilege. The Court finds that Apex has not shown that the cost it will incur in paying for the emails to be provided to Eric Boggess in such a review platform is significantly more than the costs associated without a review platform. One Source has clarified that the cost is $100 per GB of data per month to load and host the data on such a review platform. One month is sufficient because the review time is three weeks. One Source previously represented that 37,700 documents constitute approximately 4 GB of data. Thus, one GB of data should be sufficient because the Court is limiting the production to approximately 1,300 documents.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Non-Parties Eric and James Boggess and Wm. B. Tabler Co., Inc.'s Motion for Clarification of the Court's May 25, 2017 Order [DE 536] and **ORDERS**:

(1)     As set forth above, Apex and Deponents are to direct One Source to run a "sub-search" of the current 16,357 emails for the terms *bykowski* OR *paulb* in the "to," "from," and "cc" e-mail fields and to provide counsel for both Apex and Deponents with the total number of emails; Apex and Deponents are to direct One

Source to provide *only* counsel for Deponents with a spreadsheet showing the "date," "to," "from," "cc," "subject line" and "fine name" for each e-mail/attachment so that counsel and Eric Boggess can confirm that these emails are Paul Bykowski's emails; Deponents will produce Bykowski's emails to Apex.

(2) For the *remaining* emails from the 16,357 *after* Bykowski's emails have been removed, Deponents and Apex are to continue to work together to revise the proposed search terms until the total number of emails (not counting attachments) resulting from the final search terms is approximately 1000, using the following guidelines:

a) One Source applies the filter of excluding all searches containing the names of the chemical companies identified by Deponents;

b) Apex and Deponents work together to craft targeted searches made up of combined terms and phrases to obtain responses to the Requests in the Non Party Subpoena that is the subject of the Court's May 25, 2017 Opinion and Order; and

C) Apex and Deponents work together to limit the start date of the searches based on time limits set in the Court's May 25, 2017 Opinion and Order.

(3) Deponents and Apex are to instruct One Source to provide Eric Boggess with a Review Platform, at Apex's expense, to conduct his review of the emails resulting from the final search terms.

(4) Counsel for Apex, but not any representative of Apex, shall have the right to review the emails and/or documents that Eric Boggess determines are not relevant and/or are privileged/confidential after having reviewed the approximately 1,000 emails (plus attachments); counsel for Apex's review shall be under the protocol for Attorneys-Eyes-Only review; and neither a representative of Apex nor counsel for Apex will have the right to review any emails or documents not included in the 1,000 emails (plus attachments) to be reviewed by Eric Boggess.

SO ORDERED 19th day of October, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT