# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| APEX COLORS, INC. ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Cause No.: 2:14-CV-273-PRC |
| ) | |
| CHEMWORLD INTERNATIONAL LIMITED, ) | |
| INC., CHEMWORLD INTERNATIONAL ) | |
| LIMITED, LLC, ATUL MODI, MANOJ MODI, ) | |
| and PAUL BYKOWSKI, ) | |
|     Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on Chemworld's Motion to Reconsider Opinion and Order Regarding Sanctions for Failing to Produce Cost and Profit Information [DE 527], filed by Defendants Atul Modi, Manoj Modi, Chemworld International Limited, Inc., and Chemworld International Limited, LLC (collectively "Chemworld") on August 6, 2017. Plaintiff Apex Colors, Inc. filed a response on August 21, 2017. Chemworld's reply, which was due on August 28, 2017, was untimely filed, without leave of Court, on September 2, 2017.

## BACKGROUND

On January 5, 2016, Apex issued written discovery requests to Chemworld. Chemworld did not respond, prompting Apex to file a Motion to Compel. Two of the requests at issue were Apex's Interrogatories Nos. 3 and 4, which sought revenues, costs, and profits on sales by Bykowski:

> 3.    For the period 2003 to the present, state or identify business records showing all payments received from customers developed or identified by Paul Bykowski, and state or identify business records showing what amount of that payment went to Mr. Bykowski or another company or person at his direction. Also state or identify business records itemizing any expenses associated with these sales (for example, the cost of Chemworld purchasing the product from a supplier).

4. For the period 2003 to the present, state or identify business records showing profits attributable to sales from customers developed or identified by Paul Bykowski.

(ECF 358, Ex. A).

On March 10, 2016, the Court denied the Motion to Compel as moot because Chemworld had served discovery responses after the motion was filed. (ECF 366). However, the Court granted fees incurred in bringing the Motion to Compel under Federal Rule of Civil Procedure 37(a)(5)(A). *Id*.

On May 17, 2016, Apex and Chemworld met and conferred regarding deficiencies in Chemworld's responses. Apex memorialized the conversation in email correspondence to Chemworld the same date, asking for complete interrogatory responses. For Interrogatories 3 and 4, Apex wrote:

> INT 3 and 4—this essentially asks for a breakdown of the revenue and costs and profits made by Paul and CW. What you provided are revenues for the dye and pigment sales. So what we need are:
> · That same information but in Excel so it can be sorted
> · The cost information
> · The profit information for CW and Paul
> I am assuming this is just [another] spreadsheet or two, and please produce it in Excel. Please also send the spreadsheets for dye and solvent sales pre-2013 in Excel format. I also need to know if this is all sales made to Paul post 2012. I think that will depend on when CW stopped paying Paul for lab work separately and when it wrapped it into the higher cut of the profits.

(ECF 379-4) (Ex. E). Chemworld did not respond. (ECF 378, p. 2).

On May 27, 2016, Apex filed a second Motion to Compel related to the same January 5, 2016 discovery, arguing that Chemworld's March 10, 2016 interrogatory answers were incomplete. Apex attached a copy of Chemworld's interrogatory responses as an exhibit to the motion.

Chemworld's response to Interrogatory 3 provided:

Atul Modi, responding for himself, Manoj Modi and "the Chemworld entities", deposes and swears under oath that he testified truthfully on April 17, 2015,

> commencing at page 361 of the transcript of the hearing on Apex's Motion for Preliminary Injunction. As previously stated, and it is still true today, that for the period 2003-2008 or 2009, neither Atul, Manoj, nor any of the Chemworld entities "worked with Paul Bykowski". In 2008 or 2009, Chemworld began supplying solvent dyes to Finos or Indace.
>
> Other than those documents already produced, Atul Modi, Manoj Modi and the Chemworld entities can only identify one (1) additional business record showing all pigment sales to a) [company A]; b) [company B]; c) [company C]; d) [company D]; and e) [company E]. Chemworld has previously produced all business records available to itemize expenses associated with sales generated by Paul Bykowski, relating to the supply of solvent dyes (see Atul Modi's production of documents in February and/or March 2015, as well as his Answers to Interrogatories served by Apex's terminated counsel).
>
> For the period of February 19, 2010 to December 31, 2012, pigment sales to a) [company A]; b) [company B]; c) [company C]; d) [company D]; and e) [company E] generated [an identified dollar amount] in revenues, as shown by the only available business record, identified as a spreadsheet to track Paul's pigment sales. The available business record identifies the date of the purchase (or the date of shipping), the item purchased, the customer, the quantity, the unit price, and the gross sales amount.

(ECF 379-1) (sealed).

Chemworld's response to Interrogatory No. 4 provided:

> Other than those documents previously produced, Atul Modi, Manoj Modi and the Chemworld entities can only identify one (1) business record showing profits attributable to sales from customers develop[ed] or identified by Paul Bykowski. That record is an Excel spreadsheet of commissions paid to GB Consulting between April 8, 2010 and December 31, 2012. That spreadsheet shows the commission calculation (1/3 of the net profit), and thus multiplying that commission by three (3) shows the entire profit attributable to sales from customers developed or identified by Paul Bykowski.

*Id*.

In the Memorandum in Support of the renewed Motion to Compel, Apex argued: "Interrogatories 3-4 ask for the revenue, cost and profits on pigment and dye sales, and what portion of those profits are paid to Chemworld and what portion of those profits are paid to Paul Bykowski.

3

Chemworld produced sales information but did not provide costs or profits." (ECF 378, p. 5). Apex further wrote:

> Defense counsel insists that plaintiff's counsel should be able to calculate profits on each sale by subtracting the cost from the sales price. (See Ex. D at 2). This is not feasible for two reasons. First, *defendants have not yet provided the cost attributable to each sale*. (See Ex. F). Second, neither counsel is competent to present evidence about Chemworld's profits. This information must come from Chemworld itself.

(ECF 378, p. 5) (emphasis added).

On June 4, 2016, Chemworld filed a response brief arguing first that the discovery requests are confusing. (ECF 381, p. 1). Chemworld also criticized Apex for not quoting the interrogatories in the brief but instead characterizing them, *id.* at n.1; however, Apex attached the interrogatories and Chemworld's responses as an exhibit to the motion. In the response, Chemworld insisted that it had already provided Apex with responsive information on four occasions. *Id*. at p.1. Chemworld then argued that this discovery is "admittedly only related to 'Apex's alleged damages', if any, and Apex had four days to try and establish liability [at the hearing on the Motion for Preliminary Injunction], but showed no likelihood of success at trial." *Id*. at p. 2 (citing Order Denying Preliminary Injunction, [DE 280]). Next, Chemworld's response brief typed out the four Interrogatories at issue in Apex's Motion to Compel. *Id*. at pp. 2-3. Chemworld then directed the Court to "a) Atul Modi's testimony of April 17, 2015, commencing at Transcript Vol. 2, p. 361, b) the documents filed by Apex under seal with the motion to compel [DE 379], and c) the transcript of Paul Bykowski's § 341 bankruptcy testimony (Ex. A)." *Id*. at p. 3. Chemworld generally asserted that "[b]etween the responses made in 2016, and Chemworld's responses in 2014 and 2015, Apex has received 'full and complete answers' to some rather unclear questions, and the second motion to compel must be denied." *Id*.

4

Chemworld noted that the bankruptcy transcript demonstrates that Apex had received information regarding *payments* to GB Consulting and to Paul Bykowski by Chemworld. *Id*. at p. 4. Chemworld then contested the time period for which Apex sought information. *Id*. at p. 5. Finally, Chemworld made an argument in relation to Interrogatories Nos. 1 and 2. *Id*. at pp. 5-7. Yet, nowhere in the response brief does Chemworld provide a specific response to the arguments related to Interrogatories Nos. 3 and 4. Nor does Chemworld explain why it had not yet provided cost and profit information for the sales information it already produced in response to Interrogatories Nos. 3 and 4.

Apex filed a reply in support of the renewed Motion to Compel on June 8, 2016, noting Chemworld's failure to respond to the specific issues raised in the Motion to Compel regarding Interrogatories Nos. 3 and 4. Apex further noted that Chemworld claimed to have responded to the discovery by generally pointing the Court to several voluminous documents without specifically identifying those portions responsive to each interrogatory. Apex then addressed each of the arguments raised by Chemworld in its response brief.

On June 16, 2016, the Court issued an Order granting the Motion to Compel. (ECF 383). First, the Court noted that, although Chemworld cited bankruptcy documents, Chemworld did not identify the specific documents that are in response to each discovery request and when and in what context the documents were previously produced in *this* litigation. The Court wrote that it is not the Court's responsibility to review hundreds of pages of unspecified documents to determine whether Chemworld had already provided discovery. As for Chemworld's reference to the ruling on the motion for preliminary injunction, the Court again reminded Chemworld that the ruling did not affect the scope of discovery in this case. The Court then addressed Chemworld's concerns

regarding Interrogatories Nos. 1 and 2, which are not relevant here. Finally, the Court noted that Chemworld did not provide a specific response to Apex's arguments and then addressed each of Interrogatories Nos. 1-4 individually. As for Interrogatories Nos. 3 and 4, the Court set out the text of each interrogatory. Based on Apex's argument that Chemworld had provided sales information but did not provide cost or profit information, making a calculation of profits impossible, the Court found that Chemworld had "not provided a complete answer to Interrogatories 3 and 4" and ordered Chemworld to "provide a supplemental response to Interrogatories 3 and 4 and provide the missing cost and profit information." (ECF 383, p. 8).

On July 25, 2016, Chemworld filed a "Statement of Compliance with the Court's Order of June 16, 2016." (ECF 390). Chemworld represented that, on July 23, 2016, it produced three spreadsheet in native, Excel format detailing Paul Bykowski's *commissions* on sales of pigments and/or solvent dyes for 2014, 2015, and 2016. Chemworld represented that on July 25, 2016, it produced five additional spreadsheets detailing *commissions* on sales of pigments and/or solvent dyes, as well as miscellaneous expense reimbursement and costs of operating Bykowski's color laboratory in Portage, Indiana. And, on July 25, 2016, Chemworld served supplemental answers to Interrogatories Nos. 1-4.

Chemworld's supplemental answer to Interrogatory No. 3 provided:

Chemworld's accounting to calculate Paul Bykowski's commissions reflects only the (Cost of Goods sold) that month, and it changes from month-to-month when calculating Paul Bykowski's commissions. The invoice for the materials sets a unit price on the (Cost of Goods Sold) until that shipment is sold out. The price Chemworld pays for products changes over time, so Chemworld simply notes the unit cost of a lot as (Cost of Goods Sold). Thereafter, the unit sales price and units sold generates a (Gross Profit Margin) until the entire lot is sold. Each monthly commission calculation on each sale of a particular lot is different, depending on the unit cost to Chemworld and the unit price paid by the particular customer. Because the relationship between Chemworld and Paul Bykowski operates on a "hand shake",

6

> Paul Bykowski trusts Chemworld to calculate the profit margins. Only the current month is retained. Chemworld does not retain any spreadsheets to reflect earlier costs.
>
> The only manner to calculate Chemworld's profit is to double [sic] amount paid to Paul. Business records kept in the ordinary course identify the date of the sale (or of shipping), the item purchased, the customer, the quantity, the unit price, and the gross sales amount.

(ECF 448, p. 5). It does not appear that Chemworld provided a separate amended answer to Interrogatory No. 4.

On December 23, 2016, Apex filed a "Plaintiff's Motion for Sanctions for Failing to Comply with This Court's Order to Produce Cost and Profit Information." (ECF 447). Apex argued that there were several problems with Chemworld's July 25, 2016 representations. *Id*. at p. 2. First, Apex argued that, even if it were true that Chemworld throws out its cost records every month, Chemworld failed to provide any cost records for July 2016 or the months thereafter, noting that Chemworld had not produced a single cost or expense record. *Id*. Second, Apex asserted that, if Chemworld had been destroying records relevant to this litigation since 2013, then Chemworld had engaged in spoliation. *Id*. at pp. 2-3. Third, Apex argued that it was not believable that Chemworld keeps no records of the costs associated with its sales, which, at a minimum would be required to calculate taxes. *Id*. at p. 3. Apex explained that it was seeking the cost and profit information to be able to calculate its damages with some degree of reasonable certainty, noting that one measure of damages is lost profits. *Id*. However, all Apex had been given was Chemworld's revenue. *Id*. Apex acknowledged that Chemworld represented that it calculates profit by subtracting costs from revenues and then giving a portion of the profit to Paul Bykowski but argued that Chemworld was either refusing to turn over the records it uses to make that calculation or it destroyed the records. *Id*. Apex argued that it "should not have to take Chemworld's word on the fact that it is fairly

7

calculating profit." *Id*. For example, Apex reasoned that Chemworld could attribute a commercially unreasonable amount of money to administrative or other subjective expenses which would minimize the amount of commission paid to Bykowski by narrowing the amount attributable to profits. *Id*. Apex asked the Court to sanction Chemworld under Federal Rule of Civil Procedure 37(b)(2)(A)(ii) for failing to respond to Interrogatories Nos. 3 and 4 by allowing Apex to use Chemworld's revenues as a proxy for Chemworld's profits in the event Chemworld is found liable and lost profits are judged to be an appropriate remedy. *Id*. at p. 4.

On January 3, 2017, Chemworld filed a response to the Motion for Sanctions, asserting that the motion was frivolous because Chemworld had furnished all the necessary information on March 1, 2016, and July 25, 2016. (ECF 451). Rather than addressing Interrogatories Nos. 3 and 4, Chemworld wrote, "Apex is now complaining that it inartfully drafted a *request for production*, and when Chemworld's 'import invoices' were not produced (because those documents were not responsive to the request), Apex throws another tantrum and seeks sanctions." (ECF 451, p. 1) (emphasis added). In the response brief, Chemworld represents that the eight spreadsheets it produced in response to a request for production listed fifty-six customers developed or identified by Bykowski and disclosed that those "customers have generated approximately $689,000.00 **in profits** (not revenues as falsely asserted by Apex) in six years." (ECF 451, ¶ 12) (emphasis in original). Chemworld explained that it produced an accounting of each and every payment to Bykowski and/or related entities from April 8, 2010, to July 1, 2016, and that Bykowski's commissions totaled $344,051.14 since April 8, 2010. *Id*. at ¶¶ 16, 17. Chemworld then reasoned that Apex can "reasonably calculate" Chemworld's profits by doubling that amount, "or, to put it another way, Bykowski generated about $344,000.00 in profits, and Chemworld retained about

8

$344,000.00 in profits." *Id*. at ¶ 18. Chemworld then argued that none of the January 2016 discovery requests asked for "import records" and "costs of sales," quoting Apex's request for production of documents. *Id*. at ¶¶ 20-25. Chemworld accused Apex of trying to elicit information to gain a competitive market advantage to steal Chemworld's customers. *Id*. at 26-27.

Apex filed a reply on January 10, 2017. (ECF 454). Apex noted that Chemworld did not address its incomplete responses to Interrogatories Nos. 3 and 4 in its response brief. Apex also noted that Chemworld's representation that has provided spreadsheets showing $689,000.00 in "profits" is untrue and was really just Chemworld calculating profits by doubling Bykowski's commission, the same attempt at calculating profit information that Chemworld had previously taken, which was rejected by the Court. Apex noted that Chemworld still had not provided the cost for each sale on which those commissions are based. Apex again clarified that it seeks the itemization of expenses and documents showing how profits were calculated, as ordered by the Court. Apex also noted Chemworld's failure to address Apex's concern about spoliation of evidence.

On January 17, 2017, the Court issued an Opinion and Order, granting Apex's Motion for Sanctions and ordering, based on Fed. R. Civ. P. 37(b)(2)(A)(ii), that "the measure of Apex's lost profits as to Atul Modi, Manoj Modi, Chemworld International Limited, Inc., and Chemworld International Limited, LLC be Chemworld's revenue." (ECF 459, p. 5). The Court noted that Chemworld did not respond to the arguments in Apex's Motion for Sanctions and that Chemworld did not address the discovery requested in Interrogatories Nos. 3 and 4 anywhere in its response brief. The Court noted that Chemworld instead discussed Requests for Production Nos. 3 and 4, which are different in scope and, thus, Chemworld's brief was largely nonresponsive to the motion.

9

The Court noted that Chemworld offered no explanation for its failure to maintain cost records starting June 16, 2016, if not starting January 5, 2016, or even earlier.

> The Court recognized that Apex
>
> needs this information to calculate its damages with some degree of reasonable certainty. If Apex proves that Chemworld is liable, one measure of damages is lost profits. With the discovery produced to date, Apex only has information on Chemworld's revenues and the payments to Bykowski. Apex notes that, Chemworld admits that it calculates profits by subtracting costs from revenues and then gives a portion of the profits to Bykowski. However, Chemworld has not turned over the records its uses to make this calculation; rather, Chemworld explained that it destroys these records.
> Apex argues that it should not have to rely on Chemworld's representations that Chemworld fairly calculates profit or that Chemworld in fact pays Bykowski half of the profits. Apex offers, for example, that Chemworld could attribute a commercially unreasonable amount of money to administrative expenses, which would artificially reduce profits. Of course, this is speculation. But, without the cost information, Apex has no basis on which to verify Chemworld's profit to measure Apex's own damage of lost profits.

(ECF 459, p. 4). The Court then found that Chemworld failed to comply with the Court's June 16, 2016 Order that it "provide a supplemental response to Interrogatories 3 and 4 and provide the missing cost and profit information." (ECF 383, p. 8). The Court found Apex's requested remedy proper given Chemworld's refusal to provide the ordered discovery and its failure to maintain the monthly records its says it routinely destroys from at least June 16, 2016, if not from January 5, 2016.

**ANALYSIS**

In the instant motion, Chemworld asks the Court to reconsider its January 17, 2017 Opinion and Order imposing the sanction that the measure of Apex's lost profits be Chemworld's revenues.

Reconsideration of an interlocutory order, such as the Court's January 17, 2017 Opinion and Order on the Motion for Sanctions, is a matter of a district court's inherent power and is committed

10

to a court's sound discretion. *See Cima v. Wellpoint Health Networks, Inc.*, 250 F.R.D. 374, 386 (S.D. Ill. 2008). "Motions to reconsider serve a limited function, to be used 'where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Davis v. Carmel Clay Sch.*, 286 F.R.D. 411, 412 (S.D. Ind. 2012) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)); *see also United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008) ("A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." (citing *Bank of Waunakee*, 906 F.2d at 1191)); *Publishers Resource Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (noting that "motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence").

Accordingly, a motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale De Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1269-70 (7th Cir. 1996).

Chemworld argues that the Court's January 17, 2017 Opinion and Order is contrary to the evidence, is not warranted by Chemworld's efforts to comply with vague interrogatories, and was incorrectly based upon "interrogatories" that the Court re-interpreted as "requests to produce." (ECF 527, p. 2).

In support of the instant Motion to Reconsider, Chemworld represents that it has *now* invested 90 hours of employee time to create an excel spreadsheet of all purchases of relevant products from the time of Paul Bykowski's resignation from Finos in September 2012 to the present and served the spreadsheet on Apex on August 5, 2017. (ECF 527). Chemworld represents that the spreadsheet discloses the unit cost for each purchase. Chemworld represents that it has also identified an additional 468 "pages of records representing bills of lading, invoices, or purchase confirmations reflecting 'the cost of Chemworld purchasing the product from a supplier.'" (ECF 527). Chemworld offers to produce the documents to Apex upon receipt of a proper discovery request under Rule 34.

Chemworld is now producing the information sought in Interrogatories Nos. 3 and 4, more than a year after ordered to do so by the Court, after representing to opposing counsel in correspondence and to this Court that it did not possess the records necessary to produce this information because the records were kept for only a month, and after being sanctioned by this Court for failing to produce the information. Chemworld could have produced this cost information sought in response to Interrogatories Nos. 3 and 4 a year ago but did not.

Chemworld's Motion for Reconsideration is not well taken. The Court did not misunderstand any party in making its January 17, 2017 ruling. The Court did not make a decision outside of the issues presented by the parties. The law has not changed. And, the Court did not make an error of apprehension. Chemworld may not ask the Court to reconsider a decision on a basis that could have been raised at the time of briefing of the underlying motion but which Chemworld chose not to do. Therefore, the Court denies the Motion for Reconsideration.

In the interests of thoroughness and to avoid any future misstatement of this ruling, the Court addresses Chemworld's arguments in the instant Motion to Reconsider.

First, Chemworld's motion is based on the false assertion that Apex's Second Motion to Compel is "devoid of any explanation by Apex which identifies how Chemworld 'failed to respond.'" (ECF 527, p. 4-5 (citing ECF 377)). Chemworld cites only the "Motion" at docket entry 377 and fails to acknowledge the seven-page "Plaintiff's Memorandum of Law in Support of its Second Motion to Compel Response to the January 5, 2016 Discovery and for Sanctions" filed at docket entry 378. Apex properly filed a separate brief in support of the Rule 37 motion as required by Northern District of Indiana Local Rule 7-1(b)(2). As set forth in the background above, Apex explained in the memorandum how Chemworld had failed to fully respond to Interrogatories Nos. 3 and 4. *See* (ECF 378).

Second, Chemworld conflates the information sought in Interrogatories Nos. 3 and 4 with the documents that contain the information sought. As set forth in detail in the Background above, all of the briefing and rulings on this issue pertained to Interrogatories Nos. 3 and 4 until Chemworld's response to the Motion for Sanctions, in which *Chemworld* relied solely on its responses to Apex's January 2016 requests for production of documents and did not address the interrogatories. Perhaps Chemworld's confusion stems from the fact that Interrogatories Nos. 3 and 4 ask Chemworld to *identify* documents that provide the information Apex is seeking, which is permissible. *See* Fed. R. Civ. P. 33(d)(2). Both Interrogatories Nos. 3 and 4 ask Chemworld to "state or identify business records showing" the information sought. These are not requests for documents but properly phrased interrogatories. If Chemworld had identified the documents containing the cost

information(which it is now belatedly attempting to do), then Apex would have requested those documents under Rule 34.

Chemworld describes the Court's January 17, 2017 order as taking "exception to the fact that Chemworld did not produce *documents* reflecting the costs in response to two interrogatories." (ECF 527, p. 6). This is false. Nowhere in the Court's January 17, 2017 Opinion and Order did the Court sanction Chemworld for not producing "documents." (ECF 459).

Third, Chemworld again asserts that providing Bykowski's commissions was sufficient to answer Interrogatories Nos. 3 and 4. However, that is the same argument Chemworld made in the briefing of the underlying motions, which was insufficient. On June 16, 2016, the Court ordered Chemworld to provide the cost information responsive to Interrogatories Nos. 3 and 4; the Court did not find that calculating Chemworld's profit based on Bykowski's commissions was sufficient.

Chemworld's production on August 5, 2017, is simply too late. Chemworld argues that Apex now has the "financial records necessary to calculate actual profits," obviating the need for an evidentiary presumption. (ECF 527, p. 7). But, the Court ordered the evidentiary presumption as a sanction because of Chemworld's failure to identify this very same information a year ago and because of Chemworld's representation to Apex that it no longer had the financial records necessary to do the calculations necessary to answer the interrogatories. Chemworld offers *no explanation* for why it was unable to produce this information when originally asked over a year ago. Also, Chemworld produced this information just three weeks before the close of discovery.

If anything, the production of the withheld information on August 5, 2017 suggests that Chemworld purposefully defied the Court's June 16, 2016 order that Chemworld provide the cost and profit data. In its response brief to the instant motion, Apex notes the following colloquy during

14

Chemworld's 30(b)(6) deposition on July 7, 2017, just one month before the untimely August 5, 2017 disclosures:

> Q      Okay. So the actual total amount of revenue that Chemworld received from Paul's efforts to sell pigments and dyes is probably—certainly over six million, maybe seven million, right?
> A      Close, yes. Over the time, yes.
> Q      Are you aware that there was a court ruling in this case that the measure of damages if Chemworld, or yourself or your brother are found liable is—is total revenues?
> A      No.
> Q      So you are not aware that the court ruled that the measure of damages would be total revenues and not total profits?
> A      No, I'm not aware of it.
> Q      Okay. Does that concern you?
> A      A lot.

(ECF 528-1, Ex. B, p. 299-300). Just one month later, Chemworld disclosed information it previously maintained it could not provide because the necessary records had purportedly been thrown out.

Chemworld argues that Apex will not be prejudiced by reversing the Court's ruling. But this is not the standard for reconsideration; if it were, there would be no finality in any court ruling. Moreover, Apex rightfully relied on that January 17, 2017 ruling in making strategic decisions about its experts and whether to retain a damages expert. The fact that Apex had not yet deposed Atul Modi and Paul Bykowski at the time Chemworld made this disclosure on August 5, 2017 does not change the prejudice to Apex based on its reliance on the Court's January 17, 2017 ruling.

Finally, Chemworld argues that Apex has "a very, very weak theory of liability." (ECF 527, p. 8). This, too, is not the standard for reconsideration. However, if Chemworld wins on liability, as it believes it will, then the Court's January 17, 2017 Opinion and Order will have no effect. To the extent Chemworld is arguing that, in light of Apex's "weak theory of liability," Chemworld will

15

be prejudiced in front of the jury because of the Court's sanctions ruling, there is no basis for this argument. It is not clear why Chemworld believes the jury would know of the sanction. This is a matter that may be addressed in a motion in limine at the appropriate time.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Chemworld's Motion to Reconsider Opinion and Order Regarding Sanctions for Failing to Produce Cost and Profit Information [DE 527]. The Court denies Apex's request in its response brief for sanctions under 28 U.S.C. § 1927.

So ORDERED this 23rd day of October, 2017.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT