# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

APEX COLORS, INC., )
    Plaintiff, )
)
v. )      CAUSE NO.: 2:14-CV-273-PRC
)
CHEMWORLD INTERNATIONAL LIMITED, )
INC., ATUL MODI, MANOJ MODI, and )
PAUL BYKOWSKI, )
    Defendants. )

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Sanctions up to and Including a Default Judgment and for Related Evidentiary Hearing [DE 631], filed by Plaintiff Apex Colors, Inc. ("Apex") on May 22, 2018. Defendants Chemworld International Limited, Inc., Atul Modi, Manoj Modi, and Paul Bykowski filed a response on July 15, 2018, and Apex filed a reply on July 23, 2018. This matter is also before the Court on a Motion to Strike Portions of Apex Colors, Inc.'s Reply in Support of Motion for Sanctions [DE 672], filed by Defendants on August 2, 2018. Apex filed a response on August 7, 2018, and Defendants filed a reply on August 11, 2018.

Apex seeks a sanction of default judgment pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), arguing that Defendants have willfully and repeatedly refused to comply with the Federal Rules of Civil Procedure and this Court's orders and that Defendants have destroyed, lost, or failed to preserve evidence. Apex contends that the cumulative effect of the serial discovery violations is that Defendants have deprived Apex of key evidence that would reveal the extent to which Apex-owned assets were used by Bykowski to assist Chemworld in setting up a competing business, including communications between Bykowski and the principals of Chemworld

International Limited, Inc.—Atul Modi and Manoj Modi—during the months leading up to Bykowski resigning from Apex and Finos and transferring customers to Chemworld.

In their response brief, Defendants acknowledge that they "knowingly and willingly" adopted what they term "a hard-ball litigation strategy" of "minimizing the disclosures" to their competitor and that they "weathered monetary sanctions by adopting a scorched earth position in resisting discovery."

For the reasons set forth below, the Court finds by a preponderance of the evidence that Defendants' ongoing and cumulative display of willfulness, bad faith, and fault throughout discovery in this case warrants the sanction of default judgment.

## PROCEDURAL BACKGROUND

The instant lawsuit is comprised of three consolidated cases. On July 22, 2013, in cause number 2:13-CV-247, Apex Colors, Inc. ("Apex") filed a Complaint for damages against Paul Bykowski under the Court's diversity jurisdiction, alleging willful and deliberate misappropriation and conversion of Apex's confidential and valuable information, assets, and trade secrets and tortious interference with Apex's prospective economic advantage. Apex alleged that Bykowski was using Apex's confidential and valuable information, assets, and trade secrets for his own personal economic gain and began doing so while still acting as an employee and president of Apex. Apex brought claims of breach of fiduciary duty, breach of contract, conversion, trespass, replevin, tortious interference with prospective economic advantage, Indiana Trade Secrets Act, and computer tampering.

On March 14, 2014, Bykowski filed for bankruptcy protection in cause number 2:14-2076-KL, which resulted in an automatic stay of cause number 2:13-CV-247. On June 6, 2014, Apex filed

an adversary complaint against Bykowski in the bankruptcy proceeding, in which Apex repleaded the claims previously alleged in cause number 2:13-CV-247 to try to avoid a discharge of the claims. *See* (2:14-CV-456, ECF 1).

On August 5, 2014, Apex filed a civil conspiracy complaint in the instant cause number, 2:14-CV-273, against Chemworld International Limited, Inc., Chemworld International Limited, LLC, Atul Modi, and Manoj Modi (collectively, the "Chemworld Defendants"). The claims in the instant litigation arise out of the same facts alleged against Bykowski in 2:13-CV-247 and in the Adversary Complaint in the bankruptcy proceeding. Against the Chemworld Defendants, Apex brought claims of civil conspiracy to misappropriate Apex's property, civil conspiracy to tortiously interfere with Apex's prospective economic advantage, and misappropriation of Apex's trade secrets in violation of the Indiana Trade Secrets Act.

On October 9, 2014, the Bankruptcy Court entered an order lifting the automatic stay so that Apex could proceed against Bykowski in 2:13-CV-247 and in the adversary proceeding.

On December 15, 2014, cause number 2:14-CV-456 was opened in this Court with the filing of an "Agreed Motion of Plaintiff Apex Colors, Inc. and Debtor Paul Bykowski to Withdraw the Reference of the Adversary Proceeding."

On December 18, 2014, the three pending cause numbers 2:13-CV-247, 2:14-CV-273, and 2:14-CV-456 were consolidated with all filings to be made in the instant cause number 2:14-CV-273. On December 19, 2014, the Court granted the agreed motion to withdraw the reference of the adversary proceeding.

On April 8, 2015, with leave of Court, Apex filed an Amended Complaint for damages against Chemworld International Limited, Inc., Chemworld International Limited, LLC, Atul Modi,

Manoj Modi, and Bykowski, adding a new claim of federal trademark infringement. A footnote in the Amended Complaint indicates that the Amended Complaint is with respect to cause number 2:14-CV-273 only and does not amend or affect Apex's Adversary Complaint against Bykowski. The Amended Complaint brought claims of civil conspiracy to misappropriate Apex's property, civil conspiracy to tortiously interfere with Apex's prospective economic advantage, misappropriation of Apex's trade secrets in violation of the Indiana Trade Secrets Act, unfair competition, and federal trademark infringement.

On September 13, 2016, with leave of Court, Apex filed a "Second Amended Consolidated Complaint and for Jury Trial," seeking legal and equitable relief against Chemworld International Limited, Inc., Chemworld International Limited, LLC, Atul Modi, Manoj Modi, and Bykowski. (ECF 397). This is the operative pleading governing all of Apex's claims against all Defendants in the three consolidated matters. In the Second Amended Consolidated Complaint, Apex dropped its claims of computer tampering and trademark infringement and is no longer claiming as a trade secret certain information, such as its customer lists.

The Second Amended Consolidated Complaint alleges that Apex's sole shareholder and director is Shyam Zalani. (ECF 397, ¶ 11) (ECF 280, p. 3). Atul Modi is a fifty-percent shareholder, vice president, and director of Chemworld International Limited, Inc. *See* (ECF 397, ¶ 8); (ECF 280, p. 2). Manoj Modi is a fifty-percent shareholder, president, and director of Chemworld International Limited, Inc. *See* (ECF 397, ¶ 9); (ECF 280, p. 2). Zalani owns a business called Indace, Inc. that primarily sources specialty chemical products from India and China for use in the plastics, coating, and ink industries. (ECF 397, ¶ 13).

In 2001, Zalani created Apex to perform product testing and to certify and sell the speciality chemical products imported by Indace in the plastics, coatings, and inks industries (primarily dyes and pigments). *Id.* at ¶¶ 10, 14. Zalani hired Paul Bykowski, who was experienced in color testing and certification, to run Apex, making him president of Apex. *Id.* at ¶¶ 1, 16. Bykowski had a written employment agreement, which contained a non-compete clause. *Id.* at ¶ 19. At Zalani's direction, Bykowski set up Apex's laboratory in Portage, Indiana. *Id.* at ¶ 25. Bykowski's duties included testing and certifying specialty chemical products, primarily for sale to customers; testing samples of new product; developing new color standards when necessary; servicing customers for Apex and later Finos, a company half-owned by Apex; and procuring product for Apex and later Finos. *Id.* at ¶ 26. Bykowski also hired, fired, and managed other employees. *Id.* at ¶ 27.

In 2002, Zalani and Jim and Eric Boggess formed a company called Finos, LLC to sell the products that were imported by Indace and were tested and certified by Apex. *Id*. at ¶¶ 33, 34. Apex alleges that, in approximately 2008 or 2009, Bykowski began sourcing dyes from a domestic supplier— Chemworld. *Id*. at ¶ 41. In 2009, Bykowski allegedly diverted pigment business away from Apex to Chemworld. *Id*. at ¶¶ 42-48. Apex alleges that Bykowski also assisted Chemworld in becoming the primary supplier of dyes to Finos by using Apex's color standards, test methods, test specifications, and laboratory to develop a portfolio of products to sell to Finos' customers. *Id*. at ¶¶ 49-52. During 2010-2011, Bykowski allegedly conspired with Chemworld, Atul Modi, and Manoj Modi to sell Chemworld products directly to Finos customers, cutting Finos out of the business and harming Apex's business. *Id*. at ¶¶ 53-54. In December 2011, Apex filed a petition to dissolve Finos. *Id*. at ¶ 55.

On September 5, 2012, Bykowski resigned from Apex. *Id*. at ¶ 59. While Zalani was out of the country on business, Bykowski allegedly removed several of Apex's assets from the Apex laboratory, including color standards, log books, the color computer with electronic testing records, and various testing records in hard copy format. *Id*. at ¶ 60. Apex alleges that it could no longer compete for Finos' customers. *Id*. at ¶ 61. In September 2012, Bykowski allegedly announced to Finos customers that he was starting a joint venture with Chemworld. *Id*. at ¶ 62. After a short return to work at Apex from October 2012 to January 2013, during which time Bykowski allegedly used the Apex laboratory to do testing for Chemworld and, with Chemworld's assistance, to solicit Finos customers, Bykowski again resigned and vacated the laboratory. *Id*. at ¶¶ 63-67. Apex alleges that Bykowski and Chemworld transferred almost all Finos customers to Chemworld. *Id*. at ¶ 68. It was not until April 2013 that Zalani learned of Bykowski's alleged misconduct. *Id*. at ¶ 77.

In the Second Amended Consolidated Complaint, Count I, for "Civil Conspiracy to Misappropriate Apex's Property," is brought against all Defendants, namely Paul Bykowski, Chemworld International Limited, Inc., Chemworld International Limited, LLC, Atul Modi, and Manoj Modi. (ECF 397, ¶¶ 90-93). Apex alleges that the Defendants knowingly worked together in a scheme to convert and misappropriate Apex's assets, trade secrets, and materials, including, but not limited to:

a. Powder dye standards, color standards, and their equivalent working standards, for all products tested by Apex for procurement of inventory through either Apex or Finos, LLC.
b. All marketing records for the years 2001 through 2012, including records pertaining to the names, addresses, phone numbers, emails, and other contact information for companies to which products were marketed or intended to be marketed.
c. All historic records for all products, product specifications, including quality control reports, certifications, and lot disposition (which lots were bought or rejected, what customers bought or rejected certain lots).

d.    All documents regarding Apex's right to use the Keller and Heckman and Greenberg Opinion Letters for food contact application.

e.    All chip books, samples, manuals, marketing materials, and display items for dyes and pigments.

f.    The historic log of any and all changes to dye standards, including references to the lot numbers of product (procured for inventory) and supply or manufacturing sources, from which quantities were extracted for use as working standards.

g.    Records of the distributions of any dye or working standards to any and all customers of Apex or Finos, LLC.

h.    All customer history documents, including names, contact names and titles, phone [numbers], address[es], ship to address[es], email addresses.

i.    All historic sales records for all customers, including products sold, quantity, price, dates of sales, and certifications sent.

j.    All records pertaining to the dye specifications and/or tolerances acceptable to each customer. Including, for each customer: application information; certifications required other than COAs, such as FDA Opinion letters; acceptable tolerances for Da, Db, DE values; critical physical parameters and limits for items such as salt, ferric and insolubles.

k.    All history of potential or prospective customers, including customer information, quotes, and products marketed or quoted for the years 2001 through 2012.

l.    For the period 2008 through 2012, all product purchase history, including product name, specifications, quantity, price, lots purchased, and dates purchased for the years 2001 through 2012.

m.    For the period 2008 through 2012, all historic suppliers of supplies and consumables, including, boxes, bags, labels, machinery, lab equipment, printing.

n.    For the period 2008 through 2012, all historic suppliers of raw materials, including manufacturers and or distributors of dyes and pigments; compounders; and sources of products offered for sale by Apex and/or Finos.

o.    All computers, hard drives, and all electronic records used for the period of 2001 - 2012:

    i.    Analytical color data generated from the spectrophotometer and Colortools software;

    ii.    The test results from all other tests performed in accordance with ISO procedures;

    iii.    All technical data sheets, Material Safety Data Sheets, product certifications and any Food Contact Certifications generated from the above data and results;

   iv. All quality control limits for all products, including, but not limited to, general and customer-specific testing results for color tolerance, salt, ferric content, chlorine, insolubles, odor, bulk density and particle size.

*Id*. at ¶ 91. Apex alleges that Defendants have refused Apex's demands for return of these items, and that Apex has been damaged in an amount to be determined at trial. *Id*. at ¶¶ 92, 93.

   Count II is a companion claim to Count I, alleging "Misappropriation of Apex's Property" against Bykowski only for knowingly converting and misappropriating Apex's assets, trade secrets, and materials listed above for his and/or Chemworld and/or Chemworld, LLC's use. *Id*. at ¶ 95. Apex alleges that Defendants have refused Apex's demands for return of these items and that Apex has been damaged in an amount to be determined at trial. *Id*. at ¶ 96, 97.

   Count III is titled "Civil Conspiracy to Tortiously Interfere with Apex's Prospective Economic Advantage" and is brought against all Defendants, alleging that Defendants knowingly worked together in a scheme to intentionally and improperly interfere with Apex's prospective business opportunities, resulting in Apex suffering pecuniary harm. *Id*. at ¶¶ 99, 100. Apex alleges that Defendants used Apex assets and confidential and proprietary information to induce customers to transfer their business to Bykowski and Chemworld and that they acted willfully, wantonly, and with reckless disregard for the rights of Apex. *Id*. at ¶¶ 101, 102.

   Count IV, a companion claim to Count III, alleges a claim of "Tortious Interference with Apex's Prospective Economic Advantage" against all Defendants, based on the same allegations in Count III. *Id*. at ¶¶ 104-107.

   In Count V, Apex brings a claim of "Conspiracy to Misappropriate Apex's Trade Secrets in Violation of the Indiana Trade Secrets Act" against all Defendants. *Id*. at ¶¶ 109, 113. Apex alleges that its trade secrets include powder standards, log books, testing specifications, testing records, and

the standard lot numbering system and that they are sufficiently secret to derive actual and potential economic value. *Id*. at ¶¶ 110, 111. Apex alleges that it engaged in reasonable practices to preserve the secrecy of its trade secrets, that Defendants worked together in a scheme to misappropriate Apex's trade secrets and materials, and that Defendants will continue to disclose and misappropriate Apex's trade secrets to operate Chemworld's business. *Id*. at ¶¶ 113, 114. Apex alleges that Defendants' actions were intentional, malicious, and unauthorized and caused Apex substantial monetary damage. ¶ 116. Apex seeks an injunction under Section 3 of the ITSA. *Id*. at ¶ 118.

Count VI is the companion claim to Count V, alleging a claim of "Misappropriation of Apex's Trade Secrets in Violation of Indiana Trade Secrets Act" against all Defendants based on the same conduct in Count V. *Id*. at ¶¶ 119-126. Apex seeks an injunction under Section 3 of the ITSA. *Id*. at ¶ 127.

In Count VII, Apex brings a claim of "Unfair Competition" against all Defendants, alleging that Bykowski, individually and on behalf of Chemworld, made representations to customers in the plastics, inks, and coatings industries, including Apex's customers, that allowed Chemworld to compete unfairly using Apex's investments. *Id*. at ¶ 130. Apex alleges that Bykowski's representations and actions have deceived the public into believing that Chemworld is the successor to Apex and that this resulted in the loss of Apex's good will and business in the plastics, ink, and coatings industries. *Id.* at ¶¶ 131, 132. Apex further alleges that Bykowski, individually and on behalf of Chemworld, has developed additional business that they would not have received if they had not used Apex's good will in the plastics, inks, and coatings industries. *Id*. at ¶ 132.

Count VIII brings a claim of "Breach of Fiduciary Duty" against Bykowski, alleging that Bykowski owed Apex fiduciary duties and that he breached his fiduciary duties to Apex. *Id*. at ¶¶

134, 135. Specifically, Apex alleges that Bykowski breached his fiduciary duties by (1) diverting, converting, and misusing Apex's assets, information obtained through his association with Apex, trade secrets, and resources under false pretenses for his own gain and for the gain of other defendants; (2) misappropriating Apex's corporate opportunities knowing these were in violation of his duties to Apex; (3) failing to take steps to reasonably and adequately protect Apex's property and business; (4) actively competing with Apex while being employed by and serving as president of Apex; and (5) concealing his business competition activities against Apex while still an employee of Apex. *Id*. at ¶ 135. Apex alleges that it has been damaged in an amount to be determined at trial. *Id*. at ¶ 136.

Count IX, for "Breach of Contract" against Bykowski, alleges that Bykowski breached his contractual duties owed to Apex under a non-compete agreement. *Id*. at ¶ 138. Specifically, Apex alleges that Bykowski breached his contractual duties owed to Apex by disclosing and failing to protect confidential information and by violating the noncompetition clause in his employment contract. *Id*. at ¶ 139. Apex alleges that it has been damaged in an amount to be determined at trial. *Id*. at ¶ 140.

In Count X for "Conversion," Apex alleges that Bykowski knowingly or intentionally exerted unauthorized control over Apex's assets, trade secrets, and materials. *Id*. at ¶ 142. Apex alleges that Apex demanded the return of the assets, trade secrets, and materials but that Bykowski refused and that Apex has been damaged in an amount to be determined at trial. *Id*. at ¶ 143.

In Count XI for "Replevin," Apex alleges Bykowski wrongfully took its property. *Id*. at ¶¶ 146-149.

In Count XII for "Trespass," Apex alleges that Bykowski deprived Apex of the use of Apex's property and impaired the value of the property by disclosing Apex's trade secrets to G.B. Consulting and/or Chemworld. *Id*. at ¶ 152.

At the conclusion of the Second Amended Consolidated Complaint, Apex requests an order of judgment jointly and severally against Bykowski, Chemworld International Limited, Inc., Chemworld International Limited, LLC, Atul Modi, and Manoj Modi to pay Apex compensatory and exemplary damages as well as prejudgment and post judgment interest. *Id*. at p. 25, ¶ A. Apex further asks for attorneys fees and expenses; disgorgement of ill-gotten gains; punitive damages; a declaration that Defendants' conduct violated the law; an injunction enjoining the Defendants and their employees and agents from further use of Apex's assets and trade secrets; an order compelling Defendants to return to Apex all trade secrets and other property as well as derivative works; an order for an accounting requiring Defendants to account for all transactions based on the use and benefit of Apex's trade secrets, property, and derivative works; an order requiring Defendants to provide a court-approved statement to their current customers to rectify the confusion in the marketplace; an order for an accounting to identify all revenue and benefits realized by Bykowski through G.B. Consulting, William Tabler Company, Inc., or Chemworld while Bykowski was president and employee of Apex and also after the termination of his employment for revenue and benefits derived from Apex resources; and an order requiring Bykowski to disgorge and forfeit all compensation received from Apex from the time he breached his fiduciary duties.

On January 17, 2017, Defendants filed an "All Defendants' Answer and Affirmative Defenses to Second Amended Consolidated Complaint." (ECF 460).

On October 3, 2018, the parties stipulated to the dismissal of Defendant Chemworld International Limited, LLC. (ECF 705).

## ANALYSIS

Plaintiff Apex Colors, Inc. ("Apex") seeks a sanction of default judgment against all remaining Defendants—Chemworld International Limited, Inc., Atul Modi, Manoj Modi, and Paul Bykowski— for their serial failure to comply with discovery requests and Court orders, depriving Apex of key evidence in this litigation. Federal Rule of Civil Procedure 37(b)(2)(A) authorizes a range of sanctions, including the entry of default judgment, for a party's failure to comply with the court's discovery orders. Fed. R. Civ. P. 37(b)(2)(A)(vi).

A court may enter default judgment as an appropriate sanction under Rule 37 upon a finding by a preponderance of the evidence that a party displayed "willfulness, bad faith, or fault." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016); *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011); *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003), overruled on other grounds by *Ramirez*, 845 F.3d at 781. However, because entry of default judgment is one of the most severe sanctions, a court must "find that the responsible party acted or failed to act with a degree of culpability that exceeds simple inadvertence or mistake before it may choose [default judgment] as a sanction for discovery violations." *Ramirez*, 845 F.3d at 776; *see also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976) (recognizing that Rule 37 should not be construed to authorize the dismissal of a complaint when the plaintiff's noncompliance with a pretrial discovery order was due to "inability and not to willfulness, bad faith, or any fault of" the plaintiff (quoting *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 209 (1958)).

Bad faith "is characterized by conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order." *Marrocco v. Gen. Motors*, 966 F.2d 220, 224 (7th Cir.1992); *see also Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) (recognizing that willfulness and bad faith are associated with conduct that is intentional or reckless). In contrast, fault does not go to the party's intent but "presumes that the sanctioned party was guilty of 'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" *Ramirez*, 845 F.3d at 776 (quoting *Marrocco*, 966 F.2d at 224; *Long*, 213 F.3d at 987 ("Fault in this context suggests objectively unreasonable behavior[.]"); *e360 Insight, Inc.*, 658 F.3d at 642-43 (distinguishing the degree of fault necessary to support default from that necessary to support lesser sanctions)); *see also Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (noting that fault is "unconcerned with the non-complying party's subjective motivation").

In considering a sanction of default judgment, a court looks "to more than just isolated incidents of abuse. 'We weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit.'" *Domanus*, 742 F.3d at 301 (quoting *e360 Insight, Inc.*, 658 F.3d at 643). However, the court first must consider whether less severe sanctions will remedy the damage. *Marrocco*, 966 F.2d at 223-24; *Maynard*, 332 F.3d at 468. The sanction must also be proportionate to the party's misconduct. *Collins v. Illinois*, 554 F.3d 693, 696-98 (7th Cir. 2009); *Langley by Langley*, 107 F.3d at 515; *Melendez v. Ill. Bell Telephone Co.*, 79 F.3d 661, 672 (7th Cir. 1996).

In requesting the sanction of default judgment under Rule 37, Apex relies on three categories of conduct by Defendants: (1) prior discovery violations that have been addressed by Court orders; (2) the Chemworld Defendants' alleged spoliation or loss of emails from 2011 and 2012; and (3)

Bykowski's response to a court order to produce color computers he used between May and September 2012. For the reasons set forth below, the Court finds by a preponderance of the evidence that Defendants Chemworld International Limited, Inc., Atul Modi, Manoj Modi, and Paul Bykowski have displayed willfulness, bad faith, and fault in their discovery conduct sufficient to warrant a sanction of default judgment.

1.    *Prior Discovery Conduct Addressed by the Court*

As to the first category—discovery conduct for which the Court has issued a prior order, Apex identifies nine instances in which Bykowski and the Chemworld Defendants (Chemworld International Limited, Inc., Atul Modi, and Manoj Modi) each were ordered to answer discovery requests or to comply with previous Court orders mandating that they answer discovery requests. In some instances, Defendants refused to produce documents, even in the face of Court orders. In one instance, the Chemworld Defendants admitted they had the documents all along. In another instance, Bykowski avoided turning over his laptop computer for months, defying a court-ordered deadline, and, then, after Apex filed a motion for contempt, Bykowski represented that he had "lost" the laptop the night before. The Court reviews each of the nine orders applicable to each Defendant.

Prior to consolidation, two such orders were issued against Bykowski in Cause Number 2:13-CV-247. First, on December 11, 2013, Apex moved for an order requiring Bykowski to serve his initial disclosures, for which the deadline had passed; on January 15, 2014, the Court ordered Bykowski to serve his initial disclosures. *See* (2:13-CV-247, ECF 18). Second, on January 24, 2014, on Apex's motion, the Court issued a show cause order against non-party G.B. Consulting, Bykowski's company, ordering G.B. Consulting to show cause why it should not be held in contempt for failing to respond to a subpoena served by Apex. (2:13-CV-247, ECF 19). Eventually,

14

on March 7, 2014, Apex moved to withdraw the motion for contempt because G.B. Consulting produced the documents, and the Court vacated the show cause order. *See* (2:13-CV-247, ECF 25, 27).

The remaining orders were issued in the instant Cause Number 2:14-CV-273. On January 22, 2015, the Court ruled on Apex's Motion for an Order Ruling on Objections to Requests for Production of Documents, overruling Defendants' objections to several Requests for Production and ordering Chemworld International Limited, Inc., Atul Modi, and Manoj Modi to serve amended responses. (ECF 156). The Court awarded Apex its reasonable expenses in bringing the motion.

On January 22, 2015, the Court ruled on Apex's Motion for Order to Show Cause Why Paul Bykowski Should Not Be Held in Contempt or Alternatively Enter an Order Compelling Production of Documents and Electronically Stored Information, denying the request to show cause but ordering Bykowski to produce documents and electronically stored information, including his laptop computer. (ECF 157). The Court awarded Apex a portion of its reasonable expenses incurred in bringing the motion.

On January 22, 2015, the Court issued Orders on motions by Apex for a ruling on objections to interrogatories by Chemworld International Limited, Inc., on objections to interrogatories by Atul Modi, and on objections to requests to admit by Chemworld International Limited, Inc., granting all three motions and ordering each defendant to serve an amended discovery response. *See* (ECF 158, 159, 160). No fees were awarded on these motions.

On March 6, 2015, the Court issued an Order on Apex's Renewed Motion for Order to Show Cause Why Paul Bykowski Should Not Be Held in Contempt or Alternatively Enter an Order Compelling Production of Documents. (ECF 196). The Court found that Bykowski had failed to

15

comply with the Court's January 22, 2015 Order and ordered Bykowski to immediately produce the documents. *Id*. The Court denied the request to issue a show cause order but awarded Apex its reasonable attorney fees incurred in bringing the motion. *Id*.

On March 10, 2015, the Court ruled on Apex's Motion for an Order to Compel and Order Sanctions against Defendants Pursuant to Federal Rule of Civil Procedure 37, ordering Chemworld International Limited, Inc., Atul Modi, and Manoj Modi to serve discovery responses as set forth in the Court's January 22, 2015 Order. (ECF 199). The Court declined to award sanctions under Rule 37(b)(2)(A)(i)-(iv) as requested by Apex but ordered Defendants Chemworld International Limited, Inc., Atul Modi, and Manoj Modi to file a statement why their failure to comply with the Court's order was substantially justified or why other circumstances make an award of expenses unjust under Rule 37(b)(2)(C). It appears from the docket that no statement was filed, and the issue was not resolved.

As noted above, in the January 22, 2015 Order, the Court ordered Bykowski to surrender discovery information, including his laptop computer for inspection, by January 30, 2015. (ECF 157). On January 30, 2015, Bykowski amended his subpoena responses to indicate that he "may" have responsive documents after all but that "[o]ther than those documents [contained on his laptop], which may no longer exist on [his] hard drive" he had no other responsive documents. (ECF 242, p. 3 (quoting ECF 218)). Bykowski did not turn over the laptop on January 30, 2015. On February 12, 2015, Apex filed a motion to show cause why Bykowski should not be held in contempt for not turning over the laptop. (ECF 177). Later that afternoon, counsel for Bykowski informed counsel for Apex that Bykowski "lost" his laptop the night before at a hotel in Ohio. *See* (ECF 242, p. 3).

On March 18, 2015, Apex filed a Motion for Sanctions Regarding Paul Bykowski's Laptop pursuant to Federal Rule of Civil Procedure 37 and Court's Inherent Powers. *See* (ECF 215).

On April 13, 2015, the Court issued an Order on Apex's Motion for Sanctions, finding that Apex had demonstrated fault on the part of Bykowski based on his negligence and flagrant disregard of his duty to preserve his laptop computer, which he had been ordered to produce. (ECF 242, p. 8). The Court noted the suspicious timing of Bykowski's counsel informing Apex's counsel of the loss of the laptop just five hours after Apex filed its motion for an order to show cause based on Bykowski's failure to turn over the laptop. *Id*. at p. 9. The Court found that Apex suffered prejudice as a result of the "lost" laptop because Apex has no other way of obtaining the information that was on the computer or even knowing what other information was on the computer. *Id*. Accordingly, the Court granted the sanction of giving an adverse inference jury instruction, namely that the trier of fact "will consider a negative inference that documents contained on Bykowski's laptop computer would have been favorable to Plaintiff." *Id*. at p. 10. The Court also awarded Apex its attorney fees incurred in bringing the motion. *Id*. at p. 10. At that time, this sanction was just because it was proportionate to Bykowski's conduct and balanced Bykowski's fault with the prejudice to Apex. *Id*. at p. 9. However, as explained more in Part 4 below, in light of Defendants' combined ongoing objectionable discovery conduct since that time, the adverse inference jury instruction sanction is no longer sufficient.

In their response brief to the instant motion, Defendants argue that Bykowski purchased the laptop computer in 2010 with his own money, while employed by Finos. The purchaser of the laptop is irrelevant. Bykowski answered in discovery that the laptop contained discoverable material, the Court ordered him to produce the laptop for inspection, he failed to produce the laptop by the date

ordered, and then Apex was informed just hours after filing a show cause motion that Bykowski "lost the laptop."

In a separate order on April 13, 2015, the Court ruled on Apex's Third Motion for Order to Show Cause Why Bykowski Should Not Be Held in Contempt, Alternatively Enter an Order Compelling Production of Documents and Electronically Stored Information and for Sanctions. (ECF 243). Apex asked the Court to sanction Bykowski for failing to identify, in response to a November 2014 subpoena, the color analysis computer Craig Weadon provided to Bykowski for Bykowski's use at Apex/Finos from May to September 2012. Apex argued that it was prejudiced by Bykowski's failure to identify the color computer earlier and that Bykowski should be sanctioned for not including the Weadon computer on the prior lists of computers. Bykowski was ordered to produce both the Weadon computer as well as a Hewlett Packard Vectra computer used by Bykowski at Apex/Finos. Bykowski was sanctioned by being required to pay the cost of Apex's inspection of the Weadon color analysis computer and any other computers produced as a result of the order. The Court also ordered Bykowski to pay Apex's costs in bringing the motion.

A year later, on March 10, 2016, the Court granted in part and denied in part Apex's Motion to Compel a Response to the January 5, 2016 Discovery and for Sanctions. (ECF 366). When its January 5, 2016 interrogatories and requests for production went unanswered and after it received no response to its February 8 and February 18, 2016 follow-up correspondence to counsel for Defendants, Apex filed the Motion to Compel. This prompted Chemworld International Limited, Inc., Atul Modi, Manoj Modi, and Bykowski to serve the discovery responses on March 1, 2016. In response to the Motion to Compel, Defendants explained that their counsel had not received the January 5, 2016 discovery requests due to confusion in counsel's office but that, once counsel was

aware of the requests, Defendants served their responses on March 1, 2016. Defendants offered no explanation for counsel's failure to respond to Apex's February 8 and February 18 correspondence. Because Defendants responded to the discovery, the Court denied as moot the motion to compel and denied the request for sanctions; however, the Court granted Apex's request for an award of reasonable costs under Rule 37(a)(5).

On May 19, 2016, the Court issued an Order on Apex's April 26, 2016 Motion for Order to Show Cause Why Paul Bykowski Should Not Be Held in Contempt for Failing to Comply with this Court's September 2, 2015 Orders. (ECF 376). Eight months earlier, on September 2, 2015, the Court issued three orders awarding Apex a total of $10,975.02 in discovery-related fees against Bykowski. In its April 26, 2016 motion, Apex sought payment of the outstanding fee award and sanctions. The Court denied the request for a show cause order but ordered Bykowski to pay the fee award in monthly installments of $300 until paid in full.

On June 16, 2016, the Court issued an Order on Apex's Second Motion to Compel Responses to the January 5, 2016 Discovery and for Sanctions, ordering Chemworld International Limited, Inc., Atul Modi, Manoj Modi, and Bykowski to supplement their March 1, 2016 discovery responses in several ways set out in the Order. (ECF 383). The Court awarded Apex reasonable costs under Rule 37(a)(5) on a narrow issue.

On September 13, 2016, the Court issued an Order on Apex's Motion for Order to Show Cause Why the Chemworld Defendants Should Not Be Held in Contempt for Failing to Comply with this Court's January 22, 2015 Order and for Sanctions and also on Defendants' Motion for Order to Compel an Electronically-Stored Information Protocol. (ECF 399). The parties were ordered to confer and to execute an agreed-upon ESI Protocol, and their experts were to work jointly to develop

a joint search protocol. Chemworld International Limited, Inc., Atul Modi, and Manoj Modi were ordered to have imaged the relevant Chemworld computers/hard drives, at their expense, for the purpose of locating pre-2014 emails and other pre-2014 documents responsive to Apex's discovery request. The Court ordered the parties to pay their own expert costs but ordered Chemworld International Limited, LLC, Atul Modi, and Manoj Modi to pay a limited portion of the costs of Apex's expert and also to pay Apex's reasonable expenses incurred in bringing the motion.

Finally, on January 17, 2017, the Court issued an Order on Apex's December 23, 2016 Motion for Sanctions for Failing to Comply with This Court's Order to Produce Cost and Profit Information. (ECF 459). The Court sanctioned Chemworld International Limited, Inc., Atul Modi, and Manoj Modi pursuant to Rule 37(b)(2)(A)(ii) for defying the Court's June 16, 2016 Order to produce information on its costs and profits, imposing a sanction that, for trial purposes, the measure of Apex's lost profits as to Chemworld International Limited, Inc., Atul Modi, and Manoj Modi be Chemworld's revenue. *See* (ECF 459, p. 5). When Atul Modi learned of the sanction in July 2017, Chemworld International Limited, Inc., Atul Modi, and Manoj Modi filed a motion for reconsideration, representing that they in fact possessed and were willing to produce the cost documents that they previously represented, to opposing counsel and to the Court, did not exist. Finding that Chemworld International Limited, Inc., Atul Modi, and Manoj Modi had deliberately withheld documents in defiance of the Court's June 16, 2016 Order, the Court denied the motion for reconsideration. (ECF 557, p. 12). The Court went on "[i]n the interests of thoroughness and to avoid any future misstatement of this ruling, [to address] Chemworld's arguments made in the . . . Motion to Reconsider." *Id*. at p. 13. The Court noted the Chemworld Defendant's false assumptions underlying the motion, their unjustified misunderstanding of Apex's interrogatories, their

misstatement of the Court's January 17, 2017 Order, their reassertion of a previously rejected argument, and the untimeliness of the attempt to produce the documents they had possessed all along. *Id*. at pp. 13-14. "If anything, the production of the withheld information on August 5, 2017 suggests that [Chemworld International Limited, Inc., Atul Modi, and Manoj Modi] purposefully defied the Court's June 16, 2016 order that [they] provide the cost and profit data." *Id*. at p. 14.

2.    *Alleged Loss of Emails from 2011 and 2012*

Apex also bases the instant request for a sanction of default judgment on the Chemworld Defendants' alleged loss or spoliation of emails from 2011 and 2012. Apex filed the instant motion on May 22, 2018, and, at that time, relied on the report of its expert Andrew Garrett to attempt to show that Defendants lost or spoliated emails. However, the Court has since issued an order barring Apex from relying on the opinion of Andrew Garrett in this litigation. *See* (ECF 660) (July 2, 2018).[1] Accordingly, there is no factual basis before the Court for Apex's assertion that the Chemworld Defendants spoliated or lost electronically stored emails. As a result, alleged conduct related to lost emails cannot form the basis for relief on the instant Motion for Sanctions. Any relief sought pursuant to Federal Rule of Civil Procedure 37(e) for a failure to preserve electronically stored information is moot.

3.    *Bykowski's Production of Color Computers*

Apex also bases the instant motion on Bykowski's defiance of the Court's April 13, 2015 Order that Bykowski surrender any color computers he used between May and September 2012 while working for Apex/Finos. The order was issued one month before the scheduled preliminary

---

[1] The briefing of the instant Motion for Sanctions was stayed pending a ruling on Defendants' Motion to Prohibit Andrew Garrett from Offering Expert Testimony on the Issue of Defendant Chemworld's Email and/or Data Spoliation. *See* (ECF 660).

injunction hearing and ordered Bykowski to immediately produce for inspection, without an ESI protocol, the color computers. (ECF 243, p. 7). More specifically, the Court ordered Bykowski to produce all color computers that he used from May through September 2012, including (1) the Weadon-supplied computer that Bykowski said he used during that period and (2) the Hewlett Packard Vectra identified by Apex witness Doug Thompson. *See* (ECF 243, pp. 4-5, 7-8).

In response, Bykowski produced only the Weadon color computer. Apex hired an expert to review the computer and learned that Bykowski had not produced the "key" that is needed to read the computer. Subsequently, on September 6, 2015, Bykowski filed an "emergency" motion to obtain the return of the Weadon color computer, which the Court denied. (ECF 314, 332). In an April 6, 2016 Affidavit attached as an exhibit to the instant motion, Apex's expert Will Koenig averred that, despite not having the key that would have allowed an analysis of the color tests that had been run on the system, the initial forensic review of the Weadon color computer revealed that the computer "was not used at all between May and September 2012," having last been used in January 2012. (ECF 632-1, ¶¶ 5,7-9) (Ex. C, Verification of Will Koenig).

In the instant brief in support of the motion for sanctions, Apex writes, "Thus, Bykowski outright lied when he represented that he used the Weadon computer from May to September 2012 and to this day has not surrendered the color computer actually used for Apex/Finos business during this period." (ECF 632, p.7). Although Apex speculates about why Bykowski produced what Apex would term a "decoy" computer, what matters most for purposes of the instant motion is that the test results from the color computer that was used but not produced would have shown what tests Bykowski was performing in the Apex laboratory (using Apex equipment) that were not required for Apex/Finos business. Apex reasons that, given that there is other evidence that Bykowski was

running a side business for Chemworld International Limited, Inc., Atul Modi, and Manoj Modi before his resignation from Apex, it is reasonable to believe that Bykowski was running tests on the color computer at Apex, using Apex assets to do the testing, in furtherance of his conspiracy with Chemworld International Limited, Inc., Atul Modi, and Manoj Modi to transfer Apex clients to Chemworld.

Apex also asserts that, although it has paper records of the tests that were run, there are several instances in which someone has removed the paper records from the records for the year 2012. *See* (ECF 632-1) (Declaration of Douglas A. Thompson). In other words, Apex argues that Bykowski's failure to turn over the color computer that was actually used between May and September 2012 has ensured that Apex lacks the test records that could be used not only to impeach Bykowski and Chemworld's claims of innocence but also to incriminate them.

Defendants offered no response to this argument regarding Bykowski's production of the color computers.[2] This is one more example of the egregious behavior by Bykowski in this litigation. By itself, this conduct warrants a sanction of allowing the trier of fact to make an adverse inference regarding the information that would have been found on the color computer, as described above. However, this conduct does not stand alone. As discussed in the next section, Bykowski's failure to produce the color computer that he used from May to September 2012 is one of the many "straws" that, in combination, warrant a sanction of default judgment. *See Domanus*, 742 F.3d at 301.

---

[2] As noted in the ruling on the Motion to Strike below, Defendants' attempt to address this argument after Apex's Motion for Sanctions was fully briefed is untimely.

### 4. Cumulative Effect of Discovery Violations Throughout the Litigation

Apex contends that this is one of the rare cases that justifies the sanction of a default judgment when all the discovery violations are considered as a whole. The Court agrees. As set forth at the outset of this analysis, an entry of default judgment is an appropriate sanction under Rule 37 if the Court finds by a preponderance of the evidence, as it has in this case, that Defendants displayed willfulness, bad faith, or fault. *See Ramirez*, 845 F.3d at 781. Chemworld International Limited, Inc., Atul Modi, Manoj Modi, and Bykowski demonstrated willfulness and bad faith by acting with intentional or reckless disregard for their obligations to comply with the Court's orders and by resisting discovery, as detailed above. *See Marrocco*, 966 F.2d at 224; *Long*, 213 F.3d at 987. In addition, Chemworld International Limited, Inc., Atul Modi, Manoj Modi, and Bykowski demonstrated fault by exercising poor judgment throughout their conduct in discovery, by failing to preserve evidence, by purposefully withholding evidence, and by delaying the proceedings. *See Ramirez*, 845 F.3d at 776. The Court has considered "all the straws that the recalcitrant party piled on over the course of the lawsuit" in issuing the sanction of default judgment. *Domanus*, 742 F.3d at 301 (quoting *e360 Insight, Inc.*, 658 F.3d at 643).

Nothing about Defendants' conduct in this litigation can be described as a "mistake or carelessness." *See Long*, 213 F.3d at 987. Nor did the failures to produce discovery responses result from any "inability." *Societe Internationale*, 357 U.S. at 209. In their response brief, Defendants admit that they "knowingly and willingly" adopted what they term "a hard ball litigation strategy" of "minimizing the disclosures" to their competitor, Shyam Zalani of Apex, in discovery. (ECF 662, pp. 4, 6). Defendants explain that they "weathered monetary sanctions by adopting a scorched earth position in resisting discovery." *Id.* at p. 5. In their response brief, Defendants justify this approach

because they "knew what the Court did not—Apex's allegations, while they make an interesting story, bear no semblance to reality." *Id*. at p. 6. Thus, by Defendants' own admission, their discovery conduct was not a faultless inability to comply. *See Nat'l Hockey League*, 427 U.S. at 640; *Societe Internationale*, 357 U.S. at 209; *Ramirez*, 845 F.3d at 776.

As noted by Apex, on seven occasions each, Bykowski and the Chemworld Defendants (Chemworld International Limited, Inc., Atul Modi, and Manoj Modi) have been ordered to answer discovery or comply with previous Court orders related to discovery. *See* (Cause Number 2:13cv247, ECF 18, 19) (Cause Number 2:14cv273, ECF 156, 157, 158, 159, 160, 196, 199, 242, 243, 366, 376, 383, 399, 459).

By the Court's own count, of the 706 entries currently on the docket in this case, 411 are related to discovery matters between Apex and Defendants—almost 60% of the docket entries.

Apex filed ten motions to compel in this litigation, six against Bykowski (2:13cv247, DE 15, DE 26; 2:14cv273 DE 94, 177, 220, 222), one against Chemworld International Limited, Inc., Atul Modi, and Manoj Modi jointly (DE 180), and three against Chemworld International Limited, Inc., Atul Modi, Manoj Modi, and Bykowski jointly (DE 357, 360, 377). Defendants filed two motions to compel against Apex, (DE 391, 562), both of which were denied. *See* (ECF 399, 582). In the order on one of the motions, Defendants were required to pay Apex's fees in responding to the motion. *See* (ECF 582).

Attorney fees were granted against Defendants on eight occasions, for a total of $25,755.02, with $18,215.02 awarded against Bykowski only; $1,380 awarded against Chemworld International Limited, Inc., Atul Modi, Manoj Modi, and Bykowski together; and $6,160 awarded against Chemworld International Limited, Inc., Atul Modi, and Manoj Modi together. *See* (ECF 302, 303,

304, 371, 398, 422, 485, 648). In addition, the Court granted Apex a portion of its attorney fees on its motions filed at docket entries 156 and 157; however, because Apex did not identify which fees were incurred related to the narrow award of fees, the Court declined to award fees. *See* (ECF 301).

The Court sanctioned Defendants on four occasions. *See* (ECF 242) (adverse inference jury instruction for Bykowski's "lost" laptop computer); (ECF 243) (monetary sanction requiring Bykowski to pay for the cost of Apex's inspection of the color analysis computer(s)); (ECF 399) (monetary sanction requiring Chemworld International Limited, Inc., Atul Modi, and Manoj Modi to pay the reasonable costs of Apex's computer forensic expert from June 21, 2016, to June 30, 2016); (ECF 459) (sanction for Chemworld International Limited, Inc., Atul Modi, and Manoj Modi's failure to produce cost and profit information as an order that, for trial purposes, the measure of Apex's lost profits as to Chemworld International Limited, Inc., Atul Modi, and Manoj Modi is Chemworld's revenue).

In response to the instant motion, Defendants argue that their "resistance" to Apex's discovery was warranted because Apex filed this litigation in bad faith. (ECF 662, p. 3). Defendants then identify a few issues that they raised in their motion for summary judgment to show why Apex cannot prevail on its claims. Herein lies the rub. Much of the discovery Apex sought in relation to the issues raised by Defendants was contained on Bykowski's laptop computer and/or on the color computers. Moreover, Defendants cite no authority for their position that they are entitled to refuse to participate in good faith in discovery because they dispute Apex's claims.

Contrary to Defendants' assertion, Apex is not asking the Court to "re-sanction" but rather is asking for a sanction based on the totality of the conduct and Defendants' pattern of deliberate non-compliance. Defendants are correct that, at the time the Court issued rulings on the discovery

violations, either the decision not to sanction was appropriate under the circumstances or a given sanction was commensurate with, and proportionate to, the offensive conduct. However, at those times, the Court did not have the benefit of stepping back and considering Defendants' litigation conduct as a whole.

For example, Bykowski has not been previously sanctioned for his conduct related to the non-production of the color computer, which violated the Court's April 13, 2015 Order to surrender the color computer that he used during the relevant time frame. At the time the Court ordered the adverse inference jury instruction for Bykowski's "loss" of his laptop computer, the Court did not know of Bykowski's misconduct regarding the surrender of the color computers. The Court did not know that the Chemworld Defendants would purposefully withhold cost and profit information and falsely state to the Court that they did not have the documents. The Court did not know that Defendants would continue to resist discovery, necessitating considerable motion practice, as part of an admittedly deliberate strategy to disclose as little information as possible and resist discovery requests.

The Court considers all of these discovery abuses over the course of this lengthy litigation. *See Domanus*, 742 F.3d at 301; *e360 Insight, Inc.*, 658 F.3d at 643 (ruling that, even if a discovery violation could be "explained away as a simple negligent mistake," a court could find that the same conduct "is just another example of a party's demonstrated inability to take his discovery obligations seriously" to justify a harsher sanction "in light of 'the entire procedural history of the case'" (quoting *Long*, 213 F.3d at 986)). While some of the individual infractions in this case may have seemed inconsequential on their own, such as the objections to discovery requests that required court rulings, others were far from inconsequential. The Court has evaluated "the whole ball of wax" and

determined that "the small incremental blows to the integrity of the [case] add up to something that requires sanctioning. Death by a thousand cuts is no less severe than death by a single powerful blow." *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018). The sanction of default judgment is appropriate and proportionate to the egregious nature of Defendants' conduct in this case.

Although not required to first impose lesser sanctions, the Court must nevertheless consider whether less severe sanctions will remedy the damage. *Wellness Intern. Network, Ltd. v. Sharif*, 727 F.3d 751, 779 (7th Cir. 2013) (citing *Patterson v. Coca-Cola Bottling Co.*, 852 F.2d 280, 284 (7th Cir. 1988)); *Marrocco*, 966 F.2d at 223-24. In its motion, Apex seeks a sanction of default judgment but also proposes alternative lesser sanctions of a mandatory adverse inference jury instruction at trial as to the contents of Paul Bykowski's laptop and the color computer as well as the costs and fees incurred in bringing this motion.[3] Despite awarding attorney fees and issuing sanctions over the course of this litigation, including the adverse inference against Bykowski for his "lost" laptop computer and the measure of damages against the Chemworld Defendants as their revenue, Defendants maintained their "hard ball" litigation posture. In light of the totality of the litigation conduct, the prior sanction of the adverse inference and any other additional adverse inferences or award of fees and costs would be insufficient to remedy the harm suffered by Apex. The cumulative effect of Defendants' discovery misconduct, most notably the loss of Bykowski's laptop computer, the withholding of cost and profit information by Chemworld, and Bykowski's failure to produce

---

[3] In addition, Apex sought an alternative sanction of barring Defendants from moving for summary judgment; however, the Court already denied that sanction. Apex also sought an alternative sanction of an adverse inference regarding the "missing" emails from 2011 and 2012 as well as the costs and fees involved in the examination of the Chemworld hard drives and in the preparation of experts reports related to those emails; however, because the issue of the "missing" emails is moot as a result of the Court barring Apex from relying on its expert Andrew Garrett, these alternative sanctions are inapplicable.

the color computers, has deprived Apex of key evidence. This evidence includes test results that would reveal the extent to which Apex-owned assets were used to assist Chemworld in setting up a competing business. The evidence would also have included communications between Bykowski and the principals of Chemworld—Atul Modi and Manoj Modi—during the months leading up to Bykowski resigning from Apex and transferring customers to Chemworld.

For the same reasons, the sanction of default judgment is proportionate to Defendants' misconduct because of the impact on Apex's ability to prosecute its case. *See Collins*, 554 F.3d at 696-98.

Finally, Apex requests in its briefing that the Court hold a hearing on the issues of willfulness and bad faith to ensure procedural due process for Defendants. In the reply brief, Apex specifically addresses the hearing request in the context of determining the Chemworld Defendants' intent in relation to the missing emails under Rule 37(e) for spoliation of electronically stored information. *See* (ECF 632, p. 19); (ECF 667, pp. 6, 8). As set forth above, because Apex is barred from relying on its expert to contend that Defendants' emails are missing, the issue does not form a basis for the instant sanctions ruling. Therefore, no hearing is required on the missing emails. Moreover, Defendants have all been given notice and an opportunity to be heard on Apex's request for sanctions because Defendants were served with Apex's motion, had an opportunity to respond, and did respond to the motion. *See Sharif*, 727 F.3d at 779; *Fuery v. City of Chicago*, No. 07 C 5428, 2016 WL 5719442, at *13 (N.D. Ill. Sept. 29, 2016); *Loparex, LLC v. MPI Release Techs., LLC*, No. 1:09-CV-1411, 2012 WL 6094141, at *6-7 (S.D. Ind. Dec. 7, 2012); *see also Franklin v. H.O. Wolding, Inc. Group Health and Welfare Plan*, No. 1:04-CV-367, 2004 WL 3059789, at *6 (S.D. Ind. Dec. 8, 2004) (citing *Larsen v. City of Beloit*, 130 F.3d 1278, 1286 (7th Cir. 1997); *Kapco Mfg.*

*Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1494-95 (7th Cir. 1989))); *McAtee v. Buca Rests., Inc.*, No. 1:10-CV-1090, 2011 WL 6016648, at *4 (S.D. Ind. Dec. 2, 2011). All of the conduct underlying the sanction of default judgment occurred within the course of this litigation as reflected on the docket. *See Fuery*, 900 F.3d at 464 (discussing the sufficiency of due process, noting that "the amount of process required depends on the nature of the sanction and the nature and severity of the conduct," and recognizing that "conduct that occurs in the presence of the court and disrupts the fairness and integrity of the judicial process requires less process than out-of-court conduct subject to criminal sanctions"). Defendants had sufficient due process.

## MOTION TO STRIKE

In his Motion to Strike, Paul Bykowski asks the Court to strike the statement in Apex's reply brief in support of the Motion for Sanctions that "Bykowski thus lied to the Court," made in the context of discussing Bykowski's surrender of the Weadon color computer in discovery. (ECF 667, p. 5). In support of the Motion to Strike, Bykowski offers his own affidavit, addressing the use and whereabouts of the color computers. The argument and affidavit are untimely. It was in its opening brief that Apex made the argument regarding the color computers, offered Will Koenig's affidavit, and asserted that "Bykowski outright lied." *See* (ECF 632, pp. 6-8). Bykowski waived the opportunity to respond by failing to address the argument in his response to the Motion for Sanctions. The Court denies the Motion to Strike.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion to Strike Portions of Apex Colors, Inc.'s Reply in Support of Motion for Sanctions [DE 672] and **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Sanctions up to and Including a Default Judgment and for

Related Evidentiary Hearing [DE 631], granting the sanction of default judgment but denying the request for an evidentiary hearing. All of the Defendants are hereby **DEFAULTED** on each of the eleven claims asserted against them in the Second Amended Consolidated Complaint.

The Court **DENIES as moot** (1) All Defendants' Motion for Summary Judgment [DE 655]; (2) Plaintiff's Motion for Partial Summary Judgment [DE 657]; (3) the Motion to Strike Factual Assertions in Defendants' Summary Judgment Brief for Failure to Cite to Evidence in Violation of Rule 56(c) [DE 678]; and (4) Defendants' Motion to Bifurcate Trial on Liability and Damages [DE 698].

The Court **CONVERTS** the December 3, 2018 jury trial setting to a trial or hearing on damages only, to be clarified in a subsequent ruling. The Court **REAFFIRMS** the November 1, 2018 final pretrial conference.

So ORDERED this 5th day of October, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT